[Crim. No. 20156. Second Dist., Div. Five. Jan. 12, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN HENRY ARMENTA, Defendant and Appellant.

824

**COUNSEL**

George, Fritz, Calof & Mills, McCabe, George & Fritz, Cecil J. Mills, Schaffer & Fries and Benson Schaffer for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Robert W. Carney, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

KAUS, P. J.—After a court trial defendant was convicted of forcible rape (Pen. Code, § 261, subd. 3) and first degree burglary (Pen. Code, § 459). Following a 90-day period of observation pursuant to section 1203.3 of the Penal Code, probation was denied and defendant was sentenced to prison. He appeals.

### FACTS

In the early morning hours of August 30, 1970, the victim, Mrs. A., was asleep, as usual, on her living room floor. She was awakened by defendant who was armed with a knife and wore a nylon stocking which covered his face down to about the bridge of his nose. Defendant hit her with a closed fist and threatened to stab her. On defendant's orders and pleading for her life and the life of her children, Mrs. A. removed some of her clothes and an act of intercourse ensued.[1] After the act of intercourse there followed a struggle between defendant and Mrs. A. for the possession of the knife. Defendant finally wrested it from her and, after a threat, left. Mrs. A. then found a watermelon seed on her living room floor. It looked old. The screen on the back porch had been cut. Defendant had lived next to Mrs. A. for three years, and their families got along reasonably well. On August 30 defendant's family had been away from home for several days.

Mrs. A. notified the police. Officer Roach appeared in response. Mrs. A's face was noted to be swollen. It showed bruises and lacerations some of which were bleeding. As a result of what Mrs. A. told Roach he knocked on the door of defendant's apartment. Defendant opened the door. He was completely nude. He had a small laceration under his nose. After Officer Roach "commented" on it, defendant said that he had cut himself shaving. It appeared to be freshly bleeding, and defendant had one day's growth of beard.

Defendant gave Roach permission to enter. The officer then asked for permission to see the clothes defendant had worn before taking them off. Defendant said: "Sure, they're in the bedroom on the dresser." On

---

[1] A vaginal smear taken later that day showed the presence of sperm.

entering the bedroom Roach saw dresser drawers partially pulled open and saw a nylon stocking protruding about eight to ten inches. He pulled, and it, together with a second nylon attached to it, came out of the drawer. A black sweater similar to one which Mrs. A. had described to him hung in an open closet. On it were some rather long, light colored hairs which resembled those of Mrs. A's head.

The bed was unmade. The wooden handle of a knife protruded from under the covers. Through the open bathroom door the officer saw a yellow towel which contained red blotches resembling blood. In the washing machine, located in the back of the apartment, which felt warm to the touch and contained water, the officer discovered a pair of blue pants and a pair of boxer shorts. Two watermelon seeds were found. One was in the middle of the kitchen floor and the other "at the line between the kitchen and the front room." An inspection of defendant revealed several small lacerations on his knuckles. One appeared to be bleeding. Defendant was then arrested and advised of his constitutional rights.

All the enumerated items found in the apartment were offered and received in evidence as was a sample of Mrs. A's hair.

The defense was an alibi. Its presentation created not only a conflict between defendant's testimony and that of Mrs. A., but also produced an irreconcilable conflict on certain matters between defendant and Officer Roach.[2]

On appeal defendant claims: 1. his statement that the cut under his nose resulted from shaving was inadmissible because he had not been advised of his *Miranda* rights; 2. the search of his apartment was illegal and, hence, the items seized during the search were inadmissible; 3. his trial counsel was ineffective; 4. the trial court overestimated the district attorney's function in granting probation in "unusual cases"; and 5. his case was not one where, in order to grant probation, the sixth unnumbered paragraph of section 1203 of the Penal Code requires the district attorney's concurrence, because defendant was not found to be armed with a deadly weapon.

### DISCUSSION

■ The Attorney General properly points out that we should not even consider defendant's first two points because there were no trial objections. This brings us rather quickly to his third point, that counsel was

---

[2]For example, defendant testified that Roach was wrong with respect to the washing machine being warm at the time of his arrest or about the cut under his nose being fresh.

ineffective. Defendant complains that in addition to not objecting to evidence on Fourth and Fifth Amendment grounds, the attorney made no objections at all during a trial the transcript of which covers over 150 pages of testimony.

■ As has every appellate court in the state, we must emphasize over and over again that on direct appeal a claim that representation has been so ineffective as to have deprived a defendant of his constitutional right to counsel must fail if it appears that counsel may have acted the way he did, not because of ignorance of the law, but from tactical motives. (*People* v. *Reeves,* 64 Cal.2d 766, 773-775 [51 Cal.Rptr. 691, 415 P.2d 35].)

In the case at bar, for reasons which we do not know, trial by jury was waived. That decision is not criticized. There was overwhelming evidence against defendant. The outcome of the trial depended pretty much on his credibility as opposed to that of the victim and, in part, of the police officer. What actually went through counsel's head, we do not know, but he may well have decided that defendant's best chance for an acquittal was a low-key approach which would not ruffle judicial feathers with a lot of feuding and fussing over objections, many of which were doomed to fail.[3] After all the primary goal of the defense was to secure an acquittal, not to make a good record for an appeal from a conviction.

We may be, of course, crediting trial counsel with brilliant tactical motives which would come as a surprise to him, if he reads this opinion. If defendant believes that an evidentiary hearing would reveal more than the record on appeal, the habeas corpus route is open to him.

Defendant's fourth point has merit. In *People* v. *Clay,* 18 Cal.App.3d 964 [96 Cal.Rptr. 213], the court held that the rule of *People* v. *Tenorio,* 3 Cal.3d 89 [89 Cal.Rptr. 249, 473 P.2d 993], applies to the sixth unnumbered paragraph of section 1203 of the Penal Code. A hearing by the Supreme Court was denied on October 6, 1971.

It appears that after the 90-day observation period defendant got an unusually good "report card." He had never been in any kind of trouble before. Probation was recommended. When defendant came up for sen-

---

[3]While sticking to our decision not to discuss defendant's first two claims of error, it seems obvious that most of the articles seized in the apartment were found after a consent entry into the bedroom where or from where they were in plain sight. The only argument in favor of suppression which defendant is able to make is a request that we overrule the innumerable California cases which have held that a consent is valid even if not preceded by advice that the consent may be refused. (*People* v. *Thomas,* 12 Cal.App.3d 1102, 1107, fn. 1 [91 Cal.Rptr. 867].)

tence again, there was a discussion and the deputy district attorney present said he would inquire with his office whether it would concur in a grant of probation. ■ When court reconvened two and one-half hours later, another deputy appeared and refused to concur.

The record is somewhat ambiguous on the question whether the court would have followed the recommendation of the Department of Corrections and granted probation, had it felt that it could act without the district attorney's concurrence. On the other hand the record leaves no doubt that the court felt such concurrence was necessary. Under such circumstances we feel that we must follow *People* v. *Clay, supra,* and reverse for the purpose of resentencing. The defendant was entitled to be sentenced and to have his application for probation considered by a court aware of the fact that, if it granted probation, the district attorney had no veto power. As matters stood, once the district attorney announced that it would not concur in a grant of probation, the court obviously no longer felt that any useful purpose could be served in considering the matter further.

■ Defendant's last point has no merit. The trial court explicitly found that defendant was armed with a deadly weapon, a butcher knife. The minute order for the day defendant was sentenced reads in part as follows: ". . . that at the time of the commission of the offenses defendant was armed with a deadly weapon, to wit, . . ." Obviously the failure to specify the nature of the weapon was a mere clerical error which the court is directed to correct.

The Attorney General points out that the trial court improperly sentenced defendant on both the burglary and the rape counts. (Pen. Code, § 654.)

The sentence imposed is vacated and the case is remanded to the superior court, which shall obtain a new probation report or a report from the Director of Corrections as to the conduct of defendant since his original sentencing. (*In re Cortez,* 6 Cal.3d 78, 89 [98 Cal.Rptr. 307, 490 P.2d 819].) The court shall then sentence defendant having considered the grant of probation in accordance with the views expressed herein. In all other respects the judgment is affirmed.

Stephens, J., and Reppy, J., concurred.

A petition for a rehearing was denied February 2, 1972, and appellant's petition for a hearing by the Supreme Court was denied March 8, 1972.