[No. F004731. Fifth Dist. Apr. 1, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
MARY ELLEN WARREN, Defendant and Appellant.

## COUNSEL

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Robert Scarlett, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Eddie T. Keller and William Prahl, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**REID, J.**\*—This appeal involves a habeas corpus proceeding brought for the purpose of permitting the trial court to consider appellant's request that it exercise Penal Code section 1385 discretion to dismiss special circumstance findings in a first degree murder case so as to make appellant eligible for parole. The writ was sought following the California Supreme Court's decision in *People* v. *Williams* (1981) 30 Cal.3d 470 [179 Cal.Rptr. 443, 637 P.2d 1029], wherein the Supreme Court held that the trial court had such authority under Penal Code section 1385. After issuance of the writ, the court below denied appellant's request that it dismiss the special circumstance findings on the ground that such a dismissal could be justified solely on the basis of appellant's postconviction behavior while in prison and that the court could not consider that behavior as the primary or sole basis for the exercise of Penal Code section 1385 relief without violating the separation of powers doctrine. Specifically, the court held that such an application of the statute would go beyond the scope of a dismissal in furtherance of justice and would instead constitute an impermissible judicial commutation of sentence in derogation of a power reserved to the Governor alone. (Cal. Const., art. V., § 8.) We conclude that the trial court erred in this analysis and remand the case for a reconsideration in light of this opinion.

### FACTS

On July 18, 1979, appellant was convicted by a jury of first degree murder, robbery and burglary. The jury also found to be true the alleged special

*Assigned by the Chairperson of the Judicial Council.

circumstances that the murder occurred during the commission of the crimes of robbery and burglary. At the penalty phase of the trial, the jury determined the penalty for the murder to be life imprisonment without parole. It also found that the appellant had personally used a firearm in the commission of the three crimes for which it found appellant guilty. The court imposed aggravated terms in the robbery and burglary counts, imposed the firearm use enhancements in each count and stated that the terms in the robbery and burglary counts merged in the life term. (Former Pen. Code, § 669.) The judgment was affirmed by this court on May 29, 1981.

On December 12, 1983, appellant filed a petition for writ of habeas corpus with the court below requesting that the court vacate her 1979 conviction for first degree murder with special circumstances and conduct a new sentencing hearing in order to consider her motion to strike the jury findings of special circumstances pursuant to Penal Code section 1385. On December 14, 1983, the trial court issued an order to show cause which was thereafter heard on January 19, 1984. At the order to show cause hearing the court specifically found that it had not previously considered the requested Penal Code section 1385 relief because at the time of the original sentencing it did not believe it had the discretion to consider such a request. It then granted the petition for writ of habeas corpus and set the matter for hearing to determine whether the special circumstances allegations should be stricken.

On February 23, 1984, the trial court granted appellant's motion for an order to the Director of Corrections to prepare a report of appellant's post-conviction behavior while in prison. This motion was not opposed by the prosecution at the time although the prosecutor stated that he felt that post-conviction behavior might be irrelevant in determining whether an exercise of the discretion to strike the special circumstances was appropriate. Thereafter, on April 24, 1984, the prosecutor did file formal opposition to any use of the report from the Director of Corrections or to any consideration of appellant's behavior while in custody of the Department of Corrections.

On May 30, 1984, a hearing was held on appellant's motion to strike the special circumstances. The only evidence presented at the hearing was a report from the California Department of Corrections (CDC), filed May 11, 1984, and entitled "Diagnostic Study and Evaluation by the California Department of Corrections under provisions of Penal Code section 1170 (d)." The trial court elected to consider this material at the time of the hearing. The report recommended appellant's sentence be modified from life without possibility of parole (LWOP) to life with possibility of parole. Essentially,

the report discussed appellant's performance record in state prison and observed that appellant had become responsible and dependable, receiving commendatory citations for her "cooperative attitude, willingness to work, and for the responsible and controlled manner in which she conducts herself." The report concluded appellant had succeeded in adjusting to the institutional setting, after a poor initial period of incarceration, and evaluated appellant's overall program as average. The basis for the report's recommendation of a life sentence was the "strong" probability of appellant's rehabilitation if she were given the incentive of an eventual parole date.

At the conclusion of the May 30, 1984, hearing, the court took the matter under submission pursuant to a stipulation that it might thereafter file its decision in writing. On July 2, 1984, the court made an order directing counsel to submit further briefs on the following issue: "Would a trial court's decision to strike a jury finding of a special circumstance violate the Constitutional doctrine of separation of powers (in regard to the Governor's power to commute a sentence of life imprisonment without possibility of parole to life imprisonment) if such a decision was based solely or in substantial part on a defendant's amenability to parole as demonstrated by defendant's conduct and performance in prison following conviction?" Pursuant to that order the parties filed supplemental memoranda specifically addressing the constitutional separation of powers issue. On August 14, 1984, the court filed its written decision in which it denied appellant's motion to strike the special circumstances. ■ ■■■ On September 26, 1984, it entered the following order based thereon: "The defendant's motion to strike the special circumstances alleged in the Information, and found to be true by the jury, is denied for the reasons set forth in the Court's ruling dated August 14, 1984. The judgment of conviction dated July 18, 1979, and heretofore vacated on January 19, 1984, by the Court's ruling on defendant's Petition for Writ of Habeas Corpus, is hereby reimposed."[1]

---

[1]At oral argument, counsel for respondent argued that the record of the proceedings on January 19, 1984, failed to establish that the trial court had in fact vacated the sentence. Instead, counsel argued that all the trial court did was to set the matter for hearing on appellant's motion to strike the special circumstances. The record indicates otherwise. The petition for the writ prayed that the writ issue "vacating the convictions and sentence in Case No. 19210, and allow trial counsel to move this court to strike the special circumstances . . . ." At the outset of the January 19th hearing, appellant's counsel advised the court "as the petition indicates we are at this point simply asking the court *to vacate the sentence* that was imposed in this matter originally for the purpose of allowing us to make a motion to strike the special circumstances that were found true by the jury" and, in ruling on this request, the court said, "I'm going to grant the petition for writ of habeas corpus, and I will set the matter for a hearing to [consider] the issue of whether the special circumstance should be stricken . . . ." Clearly, by granting the petition for writ of habeas corpus in this context, the court intended to, and did, vacate the sentence.

## DISCUSSION

### I.

### WOULD CONSIDERATION OF, AND RELIANCE ON, APPELLANT'S POST-ORIGINAL SENTENCING BEHAVIOR IN DETERMINING WHETHER TO EXERCISE PENAL CODE SECTION 1385 DISCRETION TO STRIKE SPECIAL CIRCUMSTANCES VIOLATE THE CONSTITUTIONAL SEPARATION OF POWERS DOCTRINE?

Appellant was convicted in 1979 and her conviction became final on appeal prior to the decision of the Supreme Court in *People* v. *Williams, supra,* 30 Cal.3d 470, which held that trial courts retain discretion under Penal Code section 1385 to strike jury findings of special circumstances in furtherance of justice.[2] In *Williams,* the Supreme Court remanded the case to the trial court for exercise of the court's discretion to determine whether or not there was a basis for dismissing the finding of two special circumstances because the trial court had indicated a desire to do so but felt it lacked that power. In the present case, the appellant sought similar relief by way of habeas corpus because a direct remand was no longer possible.

In its written decision denying appellant's motion to strike the special circumstance findings, the trial court expressed itself as follows:

"Defendant, Mary Warren, has requested that I dismiss (or strike) the jury's findings that the murder she committed took place during the course of a burglary and a robbery.

"Those findings require that defendant be imprisoned for life without possibility of parole. To dismiss the findings, as defendant requests, would make defendant eligible for consideration for parole.

"In deciding this question, I have first reviewed and considered the facts and circumstances available on the date of original sentencing, July 18, 1979.

"I have also reviewed defendant's record during her imprisonment and determined whether, and to what extent this may be considered in deciding the issue before the court.

---

[2]Penal Code section 1385 provides as follows: "The judge or magistrate may, either of its own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons of the dismissal must be set forth in an order entered upon the minutes. No dismissal shall be made for any cause which would be ground of demurrer to the accusatory pleading."

"The jury found that defendant entered the victim's residence with the specific intent to rob the victim. She carried a pistol for that very purpose. She surprised the victim in a defenseless position—lying on his couch clad in his underwear. She fired three times, inflicting two fatal wounds. She stole the victim's money and left. The jury's finding that defendant committed murder during the commission of a burglary and a robbery was amply supported by the evidence.

"This was not a shooting by a desperate thug in the panic of a small time hold up, or in a struggle over a gun by a resisting victim. This killing was a cold and calculated act of murder to facilitate a well planned theft of a large sum of money.

"Defendant showed no remorse and emphatically denied any connection with the crime.

"The court and jury were made aware that defendant had a minimal record of criminal conduct, no prior history of violence, and was in need of money to support her addiction to drugs and to care for her young child.

"No doubt these mitigating circumstances influenced the jury to impose a penalty of life imprisonment without possibility of parole rather than the penalty of death. In my view these circumstances are not sufficiently mitigating to support a grant of further leniency by dismissing the finding of special circumstances.

"I have considered reports from the Department of Corrections which set forth in detail the defendant's conduct in prison since the date of conviction.

"There can be no serious dispute that defendant has an almost unblemished record of deportment and has made significant progress toward rehabilitation while imprisoned. There is no hint of violent conduct which would cause one to believe that she would be a danger to society if paroled.

"It is quite apparent that if I should grant defendant's motion to dismiss the finding of special circumstances, such a decision could only be justified by defendant's exemplary record as a prisoner following conviction.

"I am persuaded that such a decision would go beyond the scope of a dismissal in the furtherance of justice under Penal Code, section 1385 and would instead constitute a commutation of sentence. Only the Governor of the State of California has the power to commute a sentence of life imprisonment without parole to a sentence of life imprisonment. (Calif. Const., Art. V, Section 8).

"While I appreciate that the doctrine of separation of powers does not forbid some necessary overlap of executive and judicial functions, (see *Laisne v. Calif. State Board of Optometry* (1942) 19 Cal. 2d 831) I am persuaded that performing the executive action of commuting a sentence in the guise of exercising the judicial discretion of dismissing a finding of a jury would be a violation of the doctrine of separation of powers prohibited by the Constitution. (Calif. Const., Art. III, sec. 3).

"Because of the serious consequences of this decision, I may be permitted a few gratuitous remarks. If I were governor and could exercise the executive power of commutation, I would grant Mary Warren's request and place her in the category of convicted murderers who can at some remote date be considered for parole. Although the enormity of her crime deserves severe punishment and lengthy imprisonment, her performance behind bars is persuasive evidence that she is not a person who should be locked up until her death for the protection of society. But I am not a governor, I am a judge.

"For the reasons I have expressed, it is my decision to deny the defendant's motion."

■■■ Appellant contends the refusal of the trial court to consider the CDC report detailing appellant's behavior in state prison from the time of the original sentence (July 18, 1979) to the time of the hearing on appellant's motion to strike the special circumstances (May 30, 1984)—a period of nearly five years—was error. She relies on two lines of authority, each involving distinct factual situations, to analogize that the trial court below should have considered the CDC report in exercising its section 1385 discretion.

A line of cases has developed the general rule that where the appellate court vacates a defendant's sentence for sentencing error and remands the matter to the trial court for resentencing, and where the defendant is currently eligible for probation, a supplemental probation report must be prepared prior to resentencing. (*People* v. *Rojas* (1962) 57 Cal.2d 676, 679, 682 [21 Cal.Rptr. 564, 371 P.2d 300]; *People* v. *Causey* (1964) 230 Cal.App.2d 576, 579-580 [41 Cal.Rptr. 116]; *People* v. *Keller* (1966) 245 Cal.App.2d 711, 715-718 [54 Cal.Rptr. 154]; *Van Velzer* v. *Superior Court* (1984) 152 Cal.App.3d 742, 744-745 [199 Cal.Rptr. 695]; *People* v. *Cooper* (1984) 153 Cal.App.3d 480, 483 [200 Cal.Rptr. 317].) In *Van Velzer* v. *Superior Court, supra,* defendant pled guilty to child molesting and witness tampering and was sentenced to state prison for 13 years 8 months. Defendant appealed his sentence and the appellate court remanded to the superior court for resentencing. Defendant successfully obtained a continu-

ance to have a new probation report prepared together with a psychological evaluation, and defendant's attorney submitted a supplemental statement in mitigation requesting the court to consider matters relevant to defendant's care and treatment in prison since the date of the original sentence. The trial court agreed with the prosecution's objection, sealed the materials, and imposed sentence without reference to the postoriginal sentence facts. Distinguishing California Rules of Court, rule 435(b)(1), which prohibits a sentencing court, upon revocation of a defendant's probation, from considering circumstances existing after the time probation was granted, as prohibiting examination of subsequent events where a valid judgment exists, the reviewing court concluded that the effect of reversing defendant's sentence was to restore him to his original position and as such he was "entitled to all the normal procedures and rights available at the time judgment is pronounced . . . ." (152 Cal.App.3d at p. 744.) The court noted: "A probation report is required 'where the pronouncement of judgment is contemplated in the ordinary course of criminal proceedings.' (*People* v. *Rojas, supra,* at p. 682.) The report necessarily includes collateral information about the defendant, such as written statements from the attorneys and from 'correctional personnel who observed the defendant's behavior during any period of presentence incarceration' (rule 419(a)(7)). We see no reason the court should not consider evidence of Van Velzer's care and treatment in prison since the time of the original sentence." (*Id.,* at pp. 744-745.)

*People* v. *Cooper, supra,* 153 Cal..App.3d 480, involved a defendant's appeal from a sentence imposing the aggravated term where the defendant was convicted of assault with a deadly weapon. Concluding that the sentencing court had erroneously based its choice upon aggravating factors which constituted elements of the charged offense, the appellate court concluded remand for resentencing proceedings was necessary. Defendant's sole contention on appeal was the failure of the trial court to obtain a current probation report in accordance with Penal Code section 1203, subdivision (b)[3] which provides, in pertinent part: ". . . [I]n every case in which a person is convicted of a felony and is eligible for probation, before judgment is pronounced, the court shall immediately refer the matter to the probation officer to investigate and report to the court . . . upon the circumstances surrounding the crime and the prior history and record of the person, which may be considered either in aggravation or mitigation of the punishment." Relying on *Rojas, supra, Keller, supra* and *In re Gomez* (1973) 31 Cal.App.3d 728, 731, 733 [107 Cal.Rptr. 609], the court concluded a current probation report was required to be considered by the sentencing court. (153 Cal.App.3d at p. 483.)

---

[3]All further statutory references are to the Penal Code unless otherwise noted.

In *People* v. *Brady* (1984) 162 Cal.App.3d 1 [208 Cal.Rptr. 21], this court followed the *Rojas-Cooper* rule and held that a current probation report was required prior to resentencing even though the defendant in that case was statutorily ineligible for probation. In *Brady,* this court criticized a footnote in *People* v. *Savala* (1983) 147 Cal.App.3d 63, 70 [195 Cal.Rptr. 193], footnote 4, which held that an updated probation report was not required on remand for resentencing. We noted that a probation report bears directly and influentially upon the length of a defendant's sentence, "by affecting whether the trial court finds factors in aggravation or mitigation, the balancing of those factors, and the decision whether to impose concurrent or consecutive sentences." (162 Cal.App.3d at p. 6.) Relying on section 1170, subdivision (b),[4] we further concluded this section contemplated "a probation report being available for the trial court's consideration *as to the selection of a term of imprisonment . . . .*" (162 Cal.App.3d at p. 6, italics in original.) We also noted the holding in *Van Velzer, supra,* to refute the contention that a defendant's behavior while incarcerated during the pendency of an appeal would not bear upon a subsequent resentencing. (*Ibid.*)

In *People* v. *Foley* (1985) 170 Cal.App.3d 1039 [216 Cal.Rptr. 865], the Third Appellate District, the same court which authored the *Savala* opinion criticized in *Brady,* agreed with *Brady* and concluded that section 1170, subdivision (b) and California Rules of Court, rule 418[5] "contemplate that a probation report should be prepared prior to a defendant's resentencing." (170 Cal.App.3d at p. 1047.) The *Foley* court was also faced with a convicted felon statutorily ineligible for probation. The *Foley* court specifically addressed the issue of whether a supplementary probation report should set forth a defendant's behavior in prison during his appeal. The court noted the provision in section 1170, subdivision (b), that the trial court could consider reports received pursuant to section 1203.03. Diagnostic evaluations under section 1203.03 are made in the prison setting and are appropriate only " '[i]n any case in which a defendant is convicted of an offense punishable by imprisonment in the state prison' . . . ." (*Id.,* at p. 1047.) The court concluded that the statute contemplated the sentencing judge's consideration of defendant's postconviction behavior in prison in setting a

---

[4]Section 1170, subdivision (b), pertaining to the trial court's imposition of one of three possible terms as a judgment of imprisonment, states in part: "In determining whether there are circumstances that *justify imposition of the upper or lower term, the court may consider the record in the case, the probation officer's report, other reports including reports received pursuant to Section 1203.03* and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing."

[5]Rule 418 provides: "Regardless of the defendant's eligibility for probation, the sentencing judge should refer the matter to the probation officer for a presentence investigation and report."

term. (*Id.*, at p. 1047.) "If a defendant's postconviction behavior in prison is relevant to setting his term at his original sentencing, we can see no reason why it would not be relevant to the setting of his term upon resentencing." (*Ibid.*)

■ The *Rojas-Cooper-Brady* line of cases clearly supports the proposition that where a sentence has been vacated and the issue remanded to the trial court for resentencing, the trial court is obligated to consider information concerning defendant's postoriginal sentencing behavior contained in a supplemental probation or corrections report. ■ Respondent apparently seeks to distinguish these cases by arguing that appellant was not being resentenced, but rather the petition for writ of habeas corpus was granted for the sole purpose of permitting the trial court to consider appellant's request that it exercise its discretion under section 1385 to strike the special circumstance findings. This argument ignores the fact that the trial court, by granting the petition for writ of habeas corpus, vacated the prior judgment, thus clearing the way for the imposition of a different sentence in the event it exercised its section 1385 discretion in appellant's favor. However, even if respondent's argument had procedural merit, it makes a distinction without a substantial difference.

In addition to the *Rojas-Cooper-Brady* line of cases, appellant relies upon a line of court decisions which have specifically approved the use of habeas corpus in affording postjudgment relief in favor of a defendant who desires that the trial court exercise section 1385 discretion in favor of striking enhancements which prevent the defendant from being considered for probation or which add to the prison term he must serve. (*People* v. *Tenorio* (1970) 3 Cal.3d 89 [89 Cal.Rptr. 249, 473 P.2d 993]; *In re Cortez* (1971) 6 Cal.3d 78 [98 Cal.Rptr. 307, 490 P.2d 819]; *In re Gomez* (1973) 31 Cal.App.3d 728 [107 Cal.Rptr. 609]; *People* v. *Wax* (1972) 24 Cal.App.3d 302 [101 Cal.Rptr. 289]; *People* v. *Armenta* (1972) 22 Cal.App.3d 823 [99 Cal.Rptr. 736]; and *People* v. *Benn* (1972) 7 Cal.3d 530 [102 Cal.Rptr. 593, 498 P.2d 433].) These decisions are not simply instructive; they are virtually decisive on the procedural problems presented by the instant case.

In *People* v. *Tenorio, supra,* 3 Cal.3d 89, defendant was convicted of possession of marijuana and admitted the allegation of a prior possession conviction. The trial court dismissed the prior conviction allegation without obtaining the prior approval of the prosecutor—a direct violation of Health and Safety Code section 11718. Subsequently, the trial court ordered probation. Concluding that Health and Safety Code section 11718 violated the California constitutional provision for separation of powers, to the extent that provision required that the coordinate branches of government exist coequally and that the prosecution not be vested with power to foreclose the

exercise of judicial power, the Supreme Court affirmed the order granting probation. (3 Cal.3d at p. 95.) The court then noted, in a footnote, that the decision should enjoy fully retroactive effect and stated "[p]etitions should be filed in the court with territorial jurisdiction in the first instance, and transferred by that court to the sentencing court in the event the court with territorial jurisdiction was not the sentencing court. [Citation omitted.] . . . Upon receipt of such a petition, the sentencing court should follow *normal sentencing procedures* and grant appropriate relief whenever deemed warranted in its discretion." (3 Cal.3d at pp. 95-96, fn. 2, italics added.)

In *In re Cortez, supra,* 6 Cal.3d 78, the Supreme Court sought to "further detail [the] implementing procedures" mentioned in the *Tenorio* footnote. (6 Cal.3d at p. 82.) The defendant in *Cortez* petitioned the Supreme Court for a writ of habeas corpus, seeking a proper hearing before the sentencing court to determine whether his prior narcotics conviction should be stricken in the interests of justice pursuant to *People* v. *Tenorio, supra.* Proceeding to spell out, in detail, the procedure to be followed for *Tenorio* petitions, the Supreme Court stated: "We conclude . . . that in order to restore a prisoner seeking *Tenorio* relief as closely as possible to his original position, he should be treated as though before the court at the time of pronouncement of judgment and should, therefore, be entitled to all the normal procedures and rights available at that time." (6 Cal.3d at p. 88.)

The procedural steps to be followed by the sentencing court as detailed in *Cortez* were in relevant part: ". . . [T]he sentencing court should issue an order directing the Attorney General, on behalf of the *People,* to show cause why the prior convictions should not be stricken for purposes of sentencing. *Fourth,* the sentencing court should appoint counsel for petitioner, unless petitioner is able to afford counsel of his own choice or, although indigent, desires and is competent to represent himself. *Fifth,* the sentencing court should obtain a new probation report and/or a report from the Director of Corrections as to the conduct of petitioner in prison since his original sentencing. *Sixth,* upon the filing of the return to the order to show cause the court should hold a hearing pursuant to Penal Code section 1204, at which petitioner is present in person and represented by counsel. *Seventh,* at the conclusion of the hearing, after argument by counsel and receipt of all relevant evidence, the court should, in its discretion, determine whether to strike, for the purpose of sentencing, the prior conviction or one or more of the prior convictions involved in the particular case. *If the court determines not to strike the prior conviction or convictions, then it should enter an order denying the petition for writ of habeas corpus and remanding the petitioner to prison to complete his sentence pursuant to the original sentence. If, however, the court determines to strike one or more of the prior*

*convictions, it should grant the petition for writ of habeas corpus, vacate the sentence and rearraign the petitioner for judgment and sentence."* (6 Cal.3d at p. 89, italics added.)

It is apparent from the foregoing that the trial court in the instant case did not follow the procedural steps set out in *Cortez* when it granted appellant's petition for writ of habeas corpus and vacated the judgment before it held a hearing on appellant's application to strike the special circumstance findings. However, had it done so, the result would have been no different. *Cortez* mandates that a defendant petitioning for habeas corpus to obtain the exercise of section 1385 discretion in favor of striking enhancements that deny him probation or that add to his term in prison be given all of the procedural rights and remedies inherent in the type of probation and judgment hearing afforded to an unsentenced defendant. Despite the fact that under *Cortez* the writ of habeas corpus will not issue and no resentencing occurs unless and until the court grants the motion to strike one or more enhancements, the petitioning defendant is entitled to a consideration of all relevant facts and circumstances that bear upon the issues as those issues exist at the time of the hearing of the application to exercise section 1385 discretion in defendant's favor. Among those facts and circumstances are those disclosed in the "new probation report and/or a report from the Director of Corrections as to the conduct of the petitioner in prison since his original sentencing."

Three Court of Appeal cases and one Supreme Court case subsequent to *Cortez* confirm the conclusion that postconviction behavior is relevant evidence which must be considered by a trial court in determining whether or not to exercise section 1385 discretion in favor of striking enhancements. (*In re Gomez, supra,* 31 Cal.App.3d 728; *People* v. *Wax, supra,* 24 Cal.App.3d 302; *People* v. *Armenta, supra,* 22 Cal.App.3d 823; and *People* v. *Benn, supra,* 7 Cal.3d 530.) In two of them (*In re Gomez* and *People* v. *Wax*) the failure of the trial court to obtain a current probation report or report from the Director of Corrections in connection with habeas corpus proceedings to obtain *Tenorio* relief was found to be reversible error. In the other two (*People* v. *Armenta* and *People* v. *Benn*), upon remand to the trial court for the purpose of conducting a *Tenorio* hearing, the appellate court specifically directed that the trial court obtain a new probation report and/or a report from the Director of Corrections as to the conduct of the defendant since his original sentencing.

In attempting to distinguish *Cortez,* respondent argues in a somewhat contradictory fashion as follows: ". . . The focus of *Williams,* unlike *Cortez,* was on the prospect of disproportionate punishment in relation to the personal culpability of the defendant. It is not necessary to consider post-sentencing conduct in prison in order to ascertain proportional culpability. *Wil-*

*liams* did not hold that lesser culpability is the *only* proper basis on which to grant a motion to strike special circumstances. However, the *Williams* court stated the power to strike 'enables the punishment to *fit the crime* as well as the perpetrator.' (30 Cal.3d at p. 489; emphasis added.) It is clear that a balanced analysis of culpability was the focus of *Williams,* and thus it was *not necessary* to consider the post-sentencing evidence. Evidence is not relevant when it has no 'tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action.' (Evid. Code, § 210.) The trial court properly redetermined the motion to strike based on the circumstances of the offense. This was the most consideration to which appellant was entitled."

In *Williams,* the trial court had indicated at the time of sentencing that it believed it lacked the power to stay or strike the special circumstances so as to eliminate the "without possibility of parole" condition from the defendant's life sentence. It further clearly indicated that if it had such power, it would exercise it in defendant's favor because her culpability under the facts of the offense was substantially less than that of her codefendant. It was in the context of these remarks by the trial court that the Supreme Court concluded: "Trial courts will exercise this power [§ 1385] in a careful and thoughtful manner. The wise use of this power will promote the administration of justice by ensuring that persons are sentenced based on the particular facts of the offense and all the circumstances. It enables the punishment to fit the crime *as well as the perpetrator.* [Italics added.] [¶] "The trial court's findings in the present case provide an example of the proper use of this power . . . ." (30 Cal.3d at pp. 489-490.)

By ruling that mitigating factors presented by the circumstances of the offense are proper considerations in determining whether or not to exercise section 1385 discretion in favor of striking a finding of special circumstances, the Supreme Court clearly did not eliminate from consideration those factors personal to the defendant, such as attributes of character and prior record. As respondent himself notes: "*Williams* did not hold that lesser culpability is the *only* proper basis on which to grant a motion to strike special circumstances." This being so, no rational basis exists for refusing to consider post-sentencing conduct as that may have a bearing on an accurate assessment of a defendant's character at the time the court is called upon to consider an exercise of section 1385 discretion.

 Having concluded that postoriginal sentencing behavior, as contained in a supplemental probation report or report from the Director of Corrections, is relevant for consideration by the sentencing court in exercising its discretion to strike special circumstance findings pursuant to section 1385, we must then proceed to the contention of respondent that the

use of such evidence violates the constitutional proscription of separation of powers. The power of the Governor of California to commute sentences is set forth in article V, section 8 of the California Constitution, which states: "Subject to application procedures provided by statute, the Governor, on conditions the Governor deems proper, may grant a reprieve, pardon, and commutation, after sentence, except in case of impeachment. The Governor shall report to the Legislature each reprieve, pardon, and commutation granted, stating the pertinent facts and the reasons for granting it. The Governor may not grant a pardon or commutation to a person twice convicted of a felony except on recommendation of the Supreme Court, 4 judges concurring." Section 4800 et seq. contains the statutory framework pertaining to the Governor's commutation powers. Respondent contends the constitutional and statutory structure does not authorize a trial court to nullify the "exclusive power of the Governor to pardon or commute sentences." Respondent argues that permitting a trial court to strike special circumstance findings based exclusively on postconviction behavior of a defendant would be tantamount to nullifying the commutation power of the Governor and violate the doctrine of separation of powers.

Article III, section 3 of the California Constitution expressly states the doctrine: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." (See *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 141 [93 Cal.Rptr. 234, 481 P.2d 242].) ■ The function of the judiciary is to declare the law and determine the rights of parties to a controversy before the court. (*Marin Water etc. Co.* v. *Railroad Com.* (1916) 171 Cal.706, 711-712 [154 P. 864].) ■ The power to commute a sentence is exclusively relegated to the Governor. "A commutation is in the nature of a favor which may be withheld entirely or granted upon such reasonable conditions, restrictions and limitations as the governor may think proper." (*In re Collie* (1952) 38 Cal.2d 396, 398 [240 P.2d 275].)

■ In *Way* v. *Superior Court* (1977) 74 Cal.App.3d 165 [141 Cal.Rptr. 383], the court upheld the retroactive provisions of the determinate sentence law against a separation of powers attack even though some defendants previously sentenced under the old law might receive a lesser punishment. In so doing the court reasoned: ". . . The separation of powers principle and the constitutional distribution of functions among the three branches of government seek to prevent the combination of basic or fundamental powers of government in one group or branch; they do not demand the rigid classification of incidental activities of government. [Citation.] Although a technique or method of procedure may be traditionally associated with a particular branch of the government, these principles do not mean that this tech-

nique or method of procedure cannot incidentally be used by another branch. [Citation.] Each branch must in some degree exercise some of the functions of others; it is only when one branch exercises the *complete* power constitutionally delegated to another that the action violates the constitutional distribution of powers. [Citation.]" (74 Cal.App.3d at p. 178.)

In *Younger* v. *Superior Court* (1978) 21 Cal.3d 102 [145 Cal.Rptr. 674, 577 P.2d 1014], the Supreme Court approved the rationale and result of *Way* v. *Superior Court, supra,* and expressed the principle invoked in the following language: "As we recently reiterated, that doctrine [separation of powers], 'although enshrined in the Constitution and fundamental to the preservation of our civil liberties, "does not mean that the three departments of our government are not in many respects mutually dependent."' [Citations.] This court has often recognized that each department of government 'for its own existence must in some degree exercise some of the functions of the others.' [Citation.] The purpose of the doctrine is to prevent one branch of government from exercising the *complete* power constitutionally vested in another [citation]; it is not intended to prohibit one branch from taking action properly within its sphere that has the *incidental* effect of duplicating a function or procedure delegated to another branch. [Citation.]" (21 Cal.3d at p. 117.)

■ The sentencing of a criminal defendant is clearly a judicial function; the sound exercise of the discretion conferred by section 1385 is a judicial power conferred to assist the court in an appropriate performance of that function. ■ The fact that exercise of section 1385 discretion may occur long after sentence was originally imposed, and may precede rather than follow vacating the original sentence for purposes of resentencing, in no way alters the fact that sentencing considerations govern the trial court's section 1385 choices. Moreover, there is no reason to conclude that the court's consideration of postconviction behavior, in the exercise of its section 1385 discretion, violates the separation of powers provision in the context of a resentencing. Consideration of postconviction behavior is not an act of mercy, grace or forgiveness as respondent implies. Rather, consideration of such evidence merely strengthens the court's ability to fit the punishment to the crime *and* the particular defendant.

Respondent has focused on the way the trial court framed the issue for consideration of postconviction behavior; namely, whether a violation of the separation of powers doctrine would result if the court were to strike a special circumstances finding "based solely or in substantial part on a defendant's amenability to parole as demonstrated by defendant's conduct and performance in prison following conviction." In concluding that it would, respondent misconstrues the true thrust of the court's question. The issue

is not whether the trial court should consider only postconviction behavior to the exclusion of circumstances of the offense and circumstances applicable to the defendant at the time of the original sentencing; rather, the question is one of the weight to be accorded by the court to the various relevant factors properly considered in a decision as to what action is truly "in furtherance of justice." The trial court is not in such a case exercising its discretion to strike special circumstances findings solely on post-conviction behavior to the exclusion of other facts. It is instead making a choice in the exercise of judicial discretion as to which factors in a given sentencing situation should be controlling. Such conduct in no way infringes upon the executive powers or prerogatives of the Governor.

Respondent also contends the practical result of adopting the position advanced by appellant would be to encourage "limitless applications to the trial courts by defendants whose judgments have long since been final based on a yearly, or perhaps monthly, change in prison behavior." There is no authority to support such a dire prediction. *Williams* does not authorize repeated motions for the trial court to exercise section 1385 discretion. It merely authorizes the exercise of such discretion where at the time of the original sentencing the record demonstrates that the trial court believed it did not possess such discretion. (See *People* v. *Williams, supra,* 30 Cal.3d 470.)

For the foregoing reasons, we conclude that the trial court erred in refusing on separation-of-powers grounds to consider appellant's postoriginal sentencing conduct while in prison in deciding whether to grant or deny appellant's motion to have the special circumstance findings stricken so that she might be eligible for parole. Having so determined, we must deal with a final procedural argument raised by appellant.

■ Because of the reasons given by the trial court in its written decision wherein it refused to strike the special circumstance findings, appellant now contends that a remand for a reconsideration of the decision is unnecessary and that this court should simply strike the special circumstance findings and give effect to what was the manifest desire and intent of the trial court had it not erroneously believed it lacked the constitutional power to act. For at least two reasons, we conclude such a procedure would be undesirable and procedurally improper.

First, in its written ruling declining to exercise its discretion in favor of striking the special circumstance findings, the trial court made the following cogent statements: "No doubt these mitigating circumstances [defendant's lack of prior criminal record, lack of prior history of violence, drug addiction and need for money to care for her young child] influenced the jury to

impose a penalty of life imprisonment without possibility of parole rather than the penalty of death. In my view these circumstances are not sufficiently mitigating to support a grant of further leniency by dismissing the finding of special circumstances.

". . . . . . . . . . . . . . . . . . . . . . .

"It is quite apparent that if I should grant defendant's motion to dismiss the finding of special circumstances, such a decision could only be justified by defendant's exemplary record as a prisoner following conviction.

"I am persuaded that such a decision would go beyond the scope of a dismissal in the furtherance of justice under . . . section 1385 and would instead constitute a commutation of sentence. Only the Governor of the State of California has the power to commute a sentence . . . ." The statement of the trial court indicates that the decision to strike the special circumstance findings could only be justified, *if at all,* by reliance on defendant's postconviction behavior. The trial court did not explicitly state it would strike the special circumstance findings if it were able to consider postconviction behavior. The conclusion is readily inferable from the foregoing statements that the trial court concluded its consideration of appellant's postconviction behavior was prohibited by the doctrine of separation of powers and did not in fact, nor did it need to, reach the determination of whether such evidence would cause it to strike the special circumstance findings. The other portion of the trial court's ruling which indicates it would grant appellant's request if it "were Governor and could exercise executive power of commutation," upon which appellant places great reliance, is preceded by the following conditional statement: "Because of the serious consequences of this decision, I may be permitted a few *gratuitous remarks.*" (Italics added.) Such gratuitous remarks are wholly unsatisfactory as a basis for reviewing a sentencing court's exercise of discretion and concluding that remand is unnecessary. (See, e.g., *People* v. *Sanders* (1983) 145 Cal.App.3d 218, 225 [193 Cal.Rptr. 331].) For this reason alone the matter should be remanded to permit the trial court to exercise its discretion in conformity with the opinions expressed herein.

Second, the analysis in support of the recommendation to hold postoriginal sentencing behavior admissible in the exercise of section 1385 discretion, together with the practical effect of such a holding, negates the proposition that the reviewing court may circumvent the remand procedure and directly modify the judgment by striking the special circumstance findings. This conclusion follows from the fact that appellant's postoriginal sentencing behavior between the time of the instant appeal and this court's decision may negate the so-called exemplary record of appellant in prison between

the time of the original sentencing and the filing of the instant appeal. Consistency in logic and analysis requires that the trial court be apprised of all the circumstances of appellant's postoriginal sentencing behavior—both good and bad. Appellant should not be permitted to benefit from desirable postconviction behavior while avoiding the detriment of undesirable postconviction behavior.

The order of the trial court denying appellant's request that the court dismiss the jury's finding of special circumstances pursuant to the discretionary power conferred by section 1385 is reversed. The cause is remanded to the trial court for a reconsideration of appellant's motion in light of this court's opinion and with directions to obtain a new probation report and/or report from the Director of Corrections as to the conduct of appellant since May 1984.

Franson, Acting P. J., and Hamlin, J., concurred.