Filed 12/18/20  P. v. Nunez CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>JOSE RAMOS NUNEZ,<br><br>  Defendant and Appellant. | B302671<br><br>(Los Angeles County<br>Super. Ct. No. VA139753) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Olivia Rosales, Judge.  Affirmed.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Jose Nunez fatally shot his brother-in-law in the chest and head for no apparent reason. A jury convicted him of first degree murder and found true firearm enhancement allegations. In a prior opinion, we affirmed the judgment of conviction, but remanded the case for the trial court to exercise its discretion whether to strike the firearm enhancement allegations. The court declined to do so, and Nunez appealed. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

The morning of August 2, 2015, Nunez was at home with his wife, Deborah Nava, and his four children. At the time they were living with Deborah's brother, Joe Nava.[2] Deborah heard a gunshot, and she ran to the back of the house where she saw Nunez holding a rifle. Nunez was reluctant to give up the firearm, but one of his children was eventually able to wrestle it away from him. The child then threw the rifle in a swimming pool.

Deborah ran to Joe's bedroom and found him on the floor, unresponsive. Joe suffered gunshot wounds to his chest and the back of his head, both of which were fatal. There were no signs that Joe had been in a struggle before he was shot.

According to one of his children, Nunez had recently been mourning the death of a family member and appeared depressed. The child had seen Nunez drinking the day before the shooting. Another child said Nunez becomes paranoid when he drinks alcohol.

---

[1] We take many of the facts from our prior nonpublished opinion in this case, *People v. Nunez* (Mar. 6, 2018, B284222) [nonpub. opn.].

[2] We refer to Deborah Nava and Joe Nava by their first names for the sake of clarity.

Nunez initially told police that a stranger shot Joe and then ran out the back of the house.  In a subsequent interview, he said he was drunk and high at the time of the shooting, and he did not "remember anything."  After an officer remarked that it was "obvious" he shot Joe, Nunez claimed Joe threatened his life, he then went to Joe's room with his rifle, and the gun fired when Joe tried to grab the weapon.  Nunez recounted a similar story at trial.  He could not explain how Joe suffered a gunshot wound to the back of the head.

A jury found Nunez guilty of first degree murder and found true that he personally and intentionally discharged a firearm, causing great bodily injury and death within the meaning of Penal Code section 12022.53, subdivisions (b), (c), and (d).[3]  The court sentenced him to 25 years to life for the first degree murder and 25 years to life for the firearm enhancement pursuant to section 12022.53, subdivision (d).  The court imposed and stayed enhancements under section 12022.53, subdivisions (b) and (c).

Nunez appealed, and this court affirmed the judgment of conviction.  (See *People v. Nunez*, *supra*, B284222.)  However, we remanded the case so the trial court could exercise its discretion whether to strike the firearm enhancement allegations pursuant to section 12022.53, subdivision (h).

On remand, Nunez filed a resentencing memorandum requesting the court strike the firearm enhancement allegations.  In support, he submitted evidence showing he has a history of depression and psychosis linked to substance abuse, including two involuntary hospitalizations.

---

[3]      All further undesignated statutory references are to the Penal Code.

3

Nunez also submitted a report from a psychologist, Harry Goldberg, who performed a psychological exam of Nunez prior to trial. According to the report, Nunez told Goldberg he used excessive amounts of alcohol and methamphetamines the day of the murder. His brother-in-law, Joe, confronted him about his drug use and the fact that he was not spending time with his family. They had an exchange of words, and Joe said, "I don't want this shit anymore." Nunez grabbed his rifle and intended to threaten Joe, but he had no recollection of what happened next.

Goldberg diagnosed Nunez with moderate major depression, severe alcohol-use disorder, and severe amphetamine-use disorder. Goldberg explained that Nunez's depression triggers his substance abuse, which then triggers a methamphetamine/alcohol induced psychotic disorder. Goldberg opined that a "combination of his depression and intoxication were the two factors that led to the shooting incident. His psychiatric disorder, primarily his Major Depression was a major contributing factor during the commission of his crime."

Nunez additionally submitted a letter to the court in which he took responsibility for the murder and expressed remorse. He claimed to no longer be "that same impulsive and careless man that committed that terrible crime." Nunez also included evidence showing he had participated in and completed numerous programs while incarcerated, including courses on restorative parenting, addiction/substance abuse, anger management, and domestic violence.

Nunez's probation report showed an extensive criminal history, including a sustained juvenile petition for two counts of assault with a semiautomatic firearm (§ 245, subd. (b)). As an adult, Nunez suffered a felony conviction for burglary in 1993

4

(§ 459), and a felony conviction for possession of a firearm by a felon in 2009 (§ 12021, subd. (a)(1)). He was also convicted of 12 misdemeanors, including for battery (§ 242) and two domestic violence offenses (§§ 233.6, subd. (a), 243, subd. (e)(1)).

At the resentencing hearing, Nunez's counsel represented that, as a juvenile, Nunez committed assault with an automobile, not assault with a semiautomatic firearm. The prosecution made the same representation in its sentencing memorandum.

The court declined to strike the firearm enhancement allegations and sentenced Nunez to an aggregate term of 50 years to life. The court explained its decision: "It is a brutal crime. He shot him in the chest for no reason at all claiming . . . there's some depression. I don't know how depression leads somebody to then take a rifle and shoot somebody. But assuming like that was in and of itself, he then shot him in the back of the head. Then he lied to the police. He actually said a stranger shot [the victim]. I don't think that depression or drug abuse explains that . . . . [¶] . . . Neither the defendant nor the victim had any defensive wound. So, to me, this is one of those incredibly shocking cases."

The court further noted Nunez's extensive criminal history "dating back to 1988 in which at least from the evidence I have is a gun was used. But even if the gun wasn't used, obviously there were two assaults that allegedly were committed back in 1988. [¶] Since then, he has engaged in domestic violence batteries, a felony burglary, felon with a firearm in 2009. So just six years before this happened he was with a firearm when he shouldn't have been with a firearm." The court noted Nunez's history of substance-induced psychotic episodes, but found it was not sufficiently mitigating to justify striking the firearm allegations.

5

Nunez timely appealed.

## DISCUSSION

On appeal, Nunez argues the trial court abused its discretion in declining to strike the firearm enhancement allegations under section 12022.53, subdivision (h).  We disagree.

We review a court's discretionary decision to dismiss or strike a sentencing allegation for abuse of discretion.  (*People v. Carmony* (2004) 33 Cal.4th 367, 373 (*Carmony*); *People v. Pearson* (2019) 38 Cal.App.5th 112, 116 (*Pearson*).)  An abuse of discretion occurs when the court is unaware of its discretion, considers impermissible factors, or acts arbitrarily, capriciously, or in a patently absurd manner.  (*Carmony, supra*, 33 Cal.4th at p. 378.)

" ' "In reviewing for abuse of discretion, we are guided by two fundamental precepts.  First, " '[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary.  [Citation.]  In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' "  [Citation.]  Second, a " 'decision will not be reversed merely because reasonable people might disagree.  "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." ' "  [Citation.]  Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." [Citation.]' "  (*Pearson, supra,* 38 Cal.App.5th at p. 116, quoting *Carmony, supra*, 33 Cal.4th at pp. 376–377.)

Here, the trial court did not abuse its discretion in declining to strike the firearm enhancement allegations.

6

As Nunez seems to concede, the circumstances of his present offense are particularly brutal.  (See Cal. Rules of Court, rule 4.421(a)(1) [that the crime involved great violence or disclosed a high degree of callousness are circumstances in aggravation].)  Nunez inflicted two fatal gunshot wounds on his brother-in-law, without any apparent provocation, while his family members were in the same house.  His child then had to wrestle the murder weapon away from him.  Nunez also has an extensive criminal history, including several crimes of violence, which began while he was a juvenile and continued through his entire adult life.  (See Cal. Rules of Court, rule 4.421(b) [a defendant's criminal history can be a circumstance in aggravation].)  On this record, we cannot say the court's decision not to strike the enhancement allegations was "so irrational or arbitrary that no reasonable person could agree with it."  (*Carmony, supra*, 33 Cal.4th at p. 377.)

Nunez asserts the court did not give sufficient weight to his remorse or Goldberg's opinion that the murder was caused by his depression and substance abuse disorders.  The trial court, however, had valid reasons to discount such factors.  For example, although Nunez eventually displayed remorse for shooting Joe, he initially denied any involvement and later partially blamed the victim for it.  (See Cal. Rules of Court, rule 4.423(b)(3) [that the "defendant voluntarily acknowledged wrongdoing *before arrest or at an early stage of the criminal process*" is a factor in mitigation (italics added)].)  Moreover, Goldberg's report did not meaningfully address Nunez's prior violent crimes or all the circumstances of the murder, including the fact that Nunez shot Joe in the back of the head and then lied to police.  The court did not act arbitrarily or irrationally in

7

concluding these circumstances were insufficient to warrant striking the firearm enhancement allegations.

Nunez next contends the trial court erred by failing to consider evidence showing he made positive progress and rehabilitation while incarcerated. (See *People v. Warren* (1986) 179 Cal.App.3d 676, 689 ["postconviction behavior . . . must be considered by a trial court in determining whether or not to exercise [§] 1385 discretion in favor of striking enhancements"].) Absent a contrary affirmative showing in the record, however, we presume the trial court considered the relevant sentencing factors when it determined whether to strike or dismiss the firearm enhancement. (*Pearson, supra*, 38 Cal.App.5th at p. 117.) Here, the record does not affirmatively disclose that the court ignored evidence of Nunez's postconviction behavior while incarcerated. Accordingly, we presume it properly considered such evidence.

Finally, we reject Nunez's assertion that the trial court abused its discretion to the extent it erroneously believed his juvenile offenses involved the use of a firearm. Although Nunez's counsel and the prosecutor represented that the offenses instead involved an automobile, the probation report indicates the sustained petitions were for assaults with a semiautomatic firearm in violation of section 245, subdivision (b). The trial court did not abuse its discretion in crediting the probation report over counsels' representations. In any event, the court acknowledged that even if counsels' representations were true, its decision would stand given it is undisputed that Nunez committed some form of assault. The court did not err on this basis.

## DISPOSITION

We affirm the judgment.

8

                                                    BIGELOW, P. J.

WE CONCUR:



GRIMES, J.



STRATTON, J.