58 Cal.Rptr.3d 823 (2007)
150 Cal.App.4th 1040
The PEOPLE, Plaintiff and Respondent,
v.
Tadashi N. SAYRES, Defendant and Appellant.
No. B188303.
Court of Appeal of California, Second District, Division Four.
May 15, 2007.
Richard D. Miggins, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Mary Jo Graves, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Susan Sullivan *824 Pithey and Susan S. Kim, Deputy Attorneys General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]
WILLHITE, J.
A jury convicted defendant Tadashi Sayres of two counts of forcible rape (§ 261, subd. (a)(2)),[1] and round true the allegations in each count that he personally used a deadly weapon (a knife) (§ 12022.3, subd. (a)) and that he committed the crimes during the commission of burglary while using a deadly weapon (§ 667.61, subds. (a) & (e)).[2] He admitted a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)). The trial court sentenced him to a total term of 86 years to life in state prison. He appeals from the judgment, contending: (1) the judgment must be reversed because the court reporter cried during a readback of testimony; (2) the trial court erred in excusing a juror during deliberations; (3) the trial court erred in excluding evidence that the victim in the instant case made an allegedly false prior accusation of attempted rape; (4) the court erred in imposing a five-year enhancement under section 667, subdivision (a), on each of the counts on which defendant was convicted; and (5) the court's selection of the upper term for the rape conviction and the knife use enhancement on count 2 violated Cunningham v. California (2007) 549 U.S.___, 127 S.Ct. 856, 166 L.Ed.2d 856 (Cunningham). We affirm.

BACKGROUND

Prosecution Case-in-Chief
In the early morning hours of March 28, 2001, defendant burglarized the Palmdale apartment of Melissa M. and raped her twice at knifepoint while her infant daughter slept in another room. The prior evening, when Melissa went to bed, she locked her apartment doors and windows except the dining room window, which she left open a few inches for ventilation.
Shortly after midnight, she was awakened by the noise of a man talking. Defendant stood in the hallway of Melissa's apartment, and asked her questions suggesting that he was looking for two individuals, one of whom owed him money. Melissa said that she lived alone and did not know the people defendant was looking for. Defendant sat on Melissa's bed. For perhaps half an hour, he talked about his mother and how his life was not fair. He then went to use the bathroom, which was located across the hall. While he was gone, Melissa put on a nightgown and underwear.
Melissa headed for the kitchen to use the telephone, but encountered defendant, who held a knife that was eight to ten inches long. Melissa asked him if he wanted a drink from the kitchen. Defendant said he did not. When Melissa reached the living room, defendant backed her up to the couch, placed the knife against her neck, and told her to sit down. She complied, whereupon he used the knife to cut away and remove her underwear. Melissa said, "No," but defendant told her to be quiet. He removed her nightgown, took off his jacket, and unzipped his pants. He ordered her to lie on the couch. When she did so, he had intercourse with her.
Defendant said Melissa was moving, and he became angry. He put the knife to her throat, and forced her into her bedroom. He ordered her to lie on her bed, which she did. Defendant then had intercourse with her again. He wiped himself on the *825 blanket, and talked to Melissa about his mother and the Book of Mormon. Melissa smelled alcohol on his breath.
Eventually, defendant said he was going to his car to get the Book of Mormon, and walked out the front door. Melissa locked the door after him, and locked the dining room window. She noticed that the window was wide open, and the screen was on the grass several feet away. Melissa went into her daughter's bedroom, where her daughter was still sleeping. Melissa hid under the desk, and called 911. A recording of the call was played for the jury.
Los Angeles County Deputy Sheriff Manuel Plasencia arrived. Melissa was crying and upset. She had "red lumps" on her neck in a straight line as if caused by a knife blade. Deputy Plasencia took Melissa to Antelope Valley Hospital Medical Center, where she underwent a sexual assault examination.
More than three years later, in August 2004, Los Angeles County Sheriffs Detective Gregory Minster received notice from the Bureau of Scientific Services that there was a DNA "hit" in Melissa's case, and he was informed of the identity of the suspectdefendant. Detective Minster placed defendant's photograph in a photographic six pack and interviewed Melissa. Melissa picked two photographsdefendant's and that of another manas possibly being her assailant, but she was not sure.
Detective Minster went to the address listed on defendant's Department of Motor Vehicles information, and spoke to defendant's girlfriend, who said that she would have defendant call him. About an hour later, defendant called Detective Minster. The detective told defendant that he had a 2001 case that might involve him. Detective Minster asked defendant about women he had been with in 2001. Defendant said that in 2001, he had been with his ex-wife and his ex-girlfriend. Detective Minster asked him to come to the station that day. Defendant agreed, but never appeared.
Sean Yoshii, a criminalist with the Los Angeles County Sheriffs Department, compared a sample from the vaginal swab of Melissa's sexual assault examination to a cheek swab from defendant. In Melissa's sample, he found a mixture of DNA from Melissa and defendant. Defendant is African-American, according to Yoshii. The probability of a black male other than defendant having made the DNA contribution was 1 in 1.8 billion.
At trial, Melissa identified defendant as her attacker. She testified that she had never met defendant before. The underwear she was wearing on the night of the attack, cut on both sides, was introduced at trial.

Defense
Defendant testified in his own defense. He admitted having intercourse with Melissa, but testified that it was consensual. According to defendant, he met Melissa, whom he remembered as Heather, at a Palmdale nightclub called Louisiana Hots. Defendant bought Melissa some drinks, and she had some Ecstasy with him. He left the club alone in his car, and followed Melissa to her apartment. He asked her if he could use the bathroom. When he came out, Melissa was in the bedroom, and told him to "come here." He walked to the room, where Melissa was sitting on the bed. They had consensual sex. He later left in his car.

DISCUSSION

I-IV[**]

V. Cunningham Error
On count 2, the trial court selected the upper term of 8 years (doubled to 16 *826 years under the second strike law) for the rape, and the upper term of 10 years for the knife use allegation. Defendant contends that in choosing these terms, the court violated Cunningham v. California, supra, 549 U.S. ___, 127 S.Ct. 856, by relying on sentencing factors not found by the jury.[8] However, as explained below, the error is harmless.[9]
In Cunningham, the Supreme Court noted that its prior decisions in, inter alia, Apprendi v. New Jersey (2000) 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 and Blakely v. Washington (2004) 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 "instruct[ ] [that] the Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant." (Cunningham, supra, 127 S.Ct. at p. 860.) The High Court concluded that under California's Determinate Sentencing Law (DSL), the middle term is the statutory maximum sentence. Overruling People v. Black (2005) 35 Cal.4th 1238, 29 Cal. Rptr.3d 740, 113 P.3d 534, the court held that "[b]ecause the DSL authorizes the judge, not the jury, to find the facts permitting an upper term sentence, the system cannot withstand measurement against our Sixth Amendment precedent." (Cunningham, supra, 127 S.Ct. at p. 871.)
However, the failure to submit a sentencing factor to the jury is not structural error requiring reversal per se. (Washington v. Recuenco (2006) ___ U.S. ___, 126 S.Ct. 2546, 165 L.Ed.2d 466.) It is subject to the harmless error test prescribed for federal constitutional error whether the error was harmless beyond a reasonable doubt (Chapman, supra, 386 U.S. at p. 36, 87 S.Ct. 824). Further, the error was harmless in this case.
In the instant case, at least two of the sentencing factors considered by the court did not violate Cunningham. The court found that "defendant has engaged in a pattern of violent conduct which indicates a serious danger to society." In reaching this finding, the court could properly consider the fact that in September 1994 defendant was convicted of robbery (§ 211) and assault with a firearm (§ 245, subd. (a)(1)), and could also properly consider the jury's findings in the instant case. Undoubtedly, defendant's past and current convictions show "a pattern of violent conduct which indicates a serious danger to society."
The trial court also relied on the fact that defendant had served a prior prison term. This factor is one on which no jury trial was required, for two independent reasons. First, it falls within the exception for prior convictions. Second, it is a fact admitted by defendant: at trial, defendant testified that in 1994 he was convicted *827 of robbery and assault with a deadly weapon, and that he was released from prison in December 1997.[10] Thus, there was no Cunningham error in the court's consideration of this factor.
One valid factor in aggravation is sufficient to support the imposition of an upper term. (People v. Cruz (1995) 38 Cal.App.4th 427, 433-434, 45 Cal.Rptr.2d 148.) Thus, the existence of these two proper sentencing factors supports the imposition of the upper terms for the rape conviction and knife use on count 2. Further, there is no reasonable possibility that had the court not considered certain other factors in violation of Cunningham, defendant's sentence would have been different. (See People v. Gonzalez (2006) 38 Cal.4th 932, 961, fn. 6, 44 Cal.Rptr.3d 237, 135 P.3d 649 [noting "substantial equivalency" between reasonable possibility and reasonable doubt formulations of harmless error].) Defendant had previously been convicted of two violent offenses. In the instant case, the jury convicted him of two counts of forcible rape (§ 261, subd. (a)(2)), and found true the allegations in each count that he personally used a knife (§' 12022.3, subd. (a)) and that he committed the crimes during the commission of burglary while using a deadly weapon (§ 667.61, subds. (a) & (e)). These findings were based on evidence that defendant burglarized Melissa's residence in the early morning hours and forcibly raped Melissa at knife point while her infant daughter was asleep in another room. There were no factors in mitigation offered at the sentencing hearing. On such aggravated facts, and with no facts in mitigation, there is no reasonable possibility that the trial court (or any reasonable trial court) would deem the middle or lower terms appropriate for a person with defendant's prior record. Therefore, the Cunningham error is harmless beyond a reasonable doubt.

DISPOSITION
The judgment is affirmed.
SUZUKAWA, J.
I concur in the judgment. I write separately to express my view that we are not required to determine whether sentencing error was harmless beyond a reasonable doubt.
The trial court cited five factors in support of its imposition of the upper term. Three of the factors were not properly considered as there was neither a finding by the jury nor an admission by defendant. They are: (1) the manner in which the crime was carried out indicates premeditation; (2) the defendant has engaged in violent conduct that indicates a serious danger to society; and (3) the crime involved great bodily harm or other acts disclosing a high degree of viciousness, callousness, and force. However, the remaining two factors the trial court cited, defendant's prior convictions as an adult are numerous and of increasing seriousness and defendant has served a prior prison term, relate to his recidivism. Thus, the trial court could rely on either factor to impose a sentence above the statutory maximum without running afoul of the rule enunciated in Apprendi v. New Jersey (2000) 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (Apprendi) and recently affirmed in Cunningham v. California (2007) 549 U.S. ___, 127 S.Ct. 856, 166 L.Ed.2d 856 (Cunningham ). Put simply, the court had the authority to sentence defendant to the upper term without violating *828 his federal constitutional right to a jury trial.
There are two components to a sentencing decision. The first is: What factors may the court consider? This question goes to the power of the sentencing court. The series of Supreme Court cases starting with Apprendi and ending with Cunningham have focused on this component. The second is: What weight does the court give to the factors it may properly consider? The Supreme Court has never suggested that a sentencing court's exercise of its discretion raises a federal constitutional question. To the contrary, the court has implied it does not. In reviewing the Federal Sentencing Guidelines, the court stated: "If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range." (U.S. v. Booker (2005) 543 U.S. 220, 233, 125 S.Ct. 738, 160 L.Ed.2d 621; see also Apprendi supra, at p. 481,120 S.Ct. 2348.)
I conclude that there is no federal constitutional bar to a state utilizing its own standard of harmless error to review a sentencing court's exercise of discretion, as long as the sentence is within the statutory range. In deciding whether this matter should be remanded for resentencing, we should follow the California rule that states: "When a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper." (People v. Price (1991) 1 Cal.4th 324, 492, 3 Cal.Rptr.2d 106, 821 P.2d 610, superseded by statute on other grounds as stated in People v. Hinks (1997) 58 Cal.App.4th 1157, 1161-1165, 68 Cal.Rptr.2d 440.) On this record, it is unlikely the trial court would have sentenced defendant any differently had it known that it could rely only on factors relating to his recidivism. As a result, I agree that remand is unnecessary.
EPSTEIN, P.J., Concurring and Dissenting.
I concur in the entirety of the opinion with the exception of the discussion of the effect of Cunningham error, and the resulting full affirmance. As the majority opinion points out, the trial court relied on five factors in imposing the aggravated term for rape. Of these, at least one involves recidivism of a kind not affected by Cunningham and the high court decisions that preceded it, and another likely satisfies the recidivism exception. These factors are, respectively, defendant's prior prison term, and that his prior convictions are numerous and of increasing seriousness. (The latter is now before our Supreme Court in People v. Towne, S125677.) But three othersthe first three enumerated by the courtare outside he recidivism exception. As to each of these, defendant has a Sixth Amendment right to have a jury determine whether it factually established, and hence a proper basis for imposition of the high term. These are: that the crime involved planning, sophistication or professionalism, indicating premeditation; that defendant engaged in a pattern of violent conduct indicating a serious danger to society; and that the crime involved acts disclosing a high degree of viciousness or callousness and force. (See Maj. Opn., ante, at p. 826, fn. 8.)
We know that the trial court took each of these five factors into account in deciding to impose the high term. We know *829 that because the court said so. We do not know whether the court would have imposed the same term on the basis of the two recidivist factors alone because the trial court did not tell us. (Under the state of the law at the time, it had no reason to do so.) While a single recidivist factor is sufficient to justify the high term, it must be clear that the court's decision was based on that factor. Where the trial court fails to exercise sentencing discretion based on a mistaken belief regarding its authority to do so, the appropriate "relief on appeal is to remand or permit the defendant to petition by writ of habeas corpus. The appellate courts do not have the power to substitute their discretion for that of the trial court or to direct the trial court to exercise its discretion" in a particular way. (People v. Benevides (1998) 64 Cal.App.4th 728, 735, 75 Cal.Rptr.2d 388 [if trial court did not realize it was empowered by Pen.Code, § 1385 to dismiss a prior conviction in a three strikes at sentencing, case should be remanded so that it may exercise that discretion; but in this case, record was clear that trial court was aware of its discretion and did exercise it]; People v. Superior Court (Romero) (1996) 13 Cal.4th 497, 530, fn. 13, 53 Cal.Rptr.2d 789, 917 P.2d 628 [defendant serving sentence under "Three Strikes" law imposed by court that misunderstood scope of its discretion to strike may raise issue on appeal or by habeas corpus to secure reconsideration of sentence]; Gardner v. Superior Court (1986) 182 Cal.App.3d 335, 341, 227 Cal.Rptr. 78 [remand to allow trial court to exercise discretion proper after reversal for failure to exercise discretion]; Richards, Watson & Gershon v. King (1995) 39 Cal.App.4th 1176, 1181, 46 Cal. Rptr.2d 169 [same]; People v. Moore (2006) 39 Cal.4th 168, 174, 45 Cal.Rptr.3d 784, 137 P.3d 959 [where validity of search depended on whether officers were aware defendant was under parole search condition, proper remedy on appeal is remand for proceedings at which that factual issue could be determined].)
So it is here. In exercising its sentencing discretion, the trial court considered factors that, we now know, were improper for it to take into account without a jury factual determination or admission by defendant. We should not try to second-guess what the court would have done if it knew it could only utilize recidivist factors. We should, instead, return the case to the trial court so that it may properly exercise that discretion. Since the majority rejects this course, I respectfully dissent from that aspect of the disposition.
NOTES
[*] Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts I-IV of the Discussion.
[1] Undesignated section references are to the Penal Code.
[2] The jury found not true the allegation in both counts that the burglary was committed with the intent to commit rape (§ 667.61, subds. (a) & (d)).
[**] See footnote *, ante.
[8] In sentencing on the rape conviction, the trial court cited the following factors: (1) "the planning, sophistication or professionalism within which the crime was carried out indicates premeditation"; (2) "the defendant has engaged in a pattern of violent conduct which indicates a serious danger to society"; (3) "the crime involved great bodily harm or other acts disclosing a high degree of viciousness or callousness and force"; (4) "the defendant's prior convictions as an adult, established petitions in juvenile detention proceedings [are] numerous and [of] increasing seriousness"; and (5) "the defendant has served a prior prison term." In sentencing on the knife use, the court relied on the fact that the "defendant did not just brandish the knife, but he actually inflicted injury, although not very serious, but injury on the victim's neck because of the pressure he applied to her throat."
[9] Because the error is harmless, this opinion does not reach respondent's contention that defendant's failure to object in the trial court forfeited the issue on appeal.
[10] The probation report shows that he was sentenced to seven years in state prison for those crimes.