75 Cal.Rptr.2d 388 (1998)
64 Cal.App.4th 728
The PEOPLE, Plaintiff and Respondent,
v.
Rudy BENEVIDES, Defendant and Appellant.
No. F026960.
Court of Appeal, Fifth District.
June 9, 1998.
As Modified on Denial of Rehearing June 25, 1998.
Review Denied September 2, 1998.
*389 A.M. Weisman, under appointment by the Court of Appeal, Diamond Bar, for Defendant and Appellant.
Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Shirley A Nelson and Judy Kaida, Deputy Attorneys General, for Plaintiff and Respondent.
Certified for Partial Publication[*]

OPINION
WISEMAN, Associate Justice.
In the published portion of this Three Strikes case we address whether an appellate court has the authority to review a trial court's decision to not exercise its Penal Code section 1385[1] discretion to dismiss or strike a prior conviction on its own motion in the interests of justice. As will be discussed, a defendant has no right to make a motion under section 1385, and a trial court is under no obligation to rule on such a "motion" or state reasons for its refusal to consider such a request or "motion." In many cases, like this one, the trial court refuses to exercise its discretion and provides no reasons for its inaction. Under these circumstances, we conclude there is only a limited right to appellate review for alleged abuse of discretion. If the record shows the court was aware of its discretion, summary denial of the allegation is generally the appropriate disposition. We hold this is an appropriate case for summary denial of defendant's contention.

PROCEDURAL HISTORY
By information, defendant was charged with second degree burglary (count 1; § 459), petty theft with a prior (count 2; § 666), and receiving stolen property (count 3; § 496). It was further alleged defendant had suffered two strike prior convictions (§ 1170.12, subd. (c)(2)(A)), and that he had served a prior prison term within the meaning of section 667.5, subdivision (b).
Defendant pled not guilty and denied the allegations. In bifurcated trials a jury found defendant guilty as charged, and subsequently the trial court found the prior conviction/prison term allegations true.
Defendant's motion for a new trial was denied. He was sentenced to prison for a term of 25 years to life on count 1, with the term imposed on count 2 ordered stayed. Count 3 was dismissed, and the prior prison term enhancement was ordered stricken. Defendant received 399 total days of credit for time served, including conduct credit.
Timely notice of appeal was filed.

FACTUAL HISTORY
At approximately 12:30 p.m. on January 1, 1996, a female customer who refused to identify *390 herself contacted a sales clerk at the J C Penney Store in Visalia and reported observing a man and woman, both described as Hispanic, exiting the north doors of the store with several sweaters still on hangers. The man and woman entered a blue Blazer vehicle parked at the curb. The customer wrote down the license plate number of the vehicle and gave it to the clerk.
Charlotte Rogers, the assistant manager, reported the theft to mall security and to the police. Rogers then determined that 20 sweaters with a sales price of $22.99 each were missing from displays located near the north doors of the store.
Detective Corey Sumpter of the Visalia Police Department was assigned to investigate the theft, and he ascertained the vehicle in which the thieves had fled was registered to Juan and Mary Varela. On January 3, 1996, Sumpter contacted Mary at her residence.[2] Christina Manriquez was present in the kitchen making breakfast. Mary told Sumpter that defendant and Manriquez had borrowed her vehicle on January 1st and returned with a large number of sweaters. Mary told Sumpter she had purchased a sweater with a J C Penney tag from Manriquez for $5. She and Manriquez also gave Sumpter consent to search the home for the sweaters. Sumpter found a woman's sweater in the bedroom occupied by Manriquez and defendant. The two sweaters were later identified at trial as being the same type as those that were stolen. No other sweaters were found. Manriquez was arrested and taken into custody.
Later that day, Sumpter contacted Juan at his residence. Juan told Sumpter that defendant and Manriquez had borrowed his vehicle and returned later in the afternoon with about ten sweaters and two to three pairs of jeans. He did not know where they had come from. Juan also told Sumpter his wife had bought one of the sweaters.
Later, defendant was arrested in a neighboring yard. When initially approached by officers, he began to run, but was immediately subdued. After waiving his constitutional rights, defendant denied having been involved in the theft, and stated he was not with anyone on New Year's Day. He denied borrowing the Varelas's vehicle and denied going anywhere in that vehicle with Manriquez. Sumpter advised defendant that Manriquez had already been arrested for the theft, and asked whether he had been with her that day. Defendant stated he probably was because he was always with her. Sumpter advised defendant that Manriquez had confessed. In response, defendant maintained neither he nor Manriquez was involved in stealing the sweaters.
On January 31, 1996, Sumpter again contacted Juan and Mary at their residence and spoke to them separately. Juan continued to maintain that defendant and Manriquez had taken his vehicle and stated defendant had a large bag when he returned that afternoon. Juan stated he tried on a pair of pants that were too big. Mary said she was asleep on the living room couch when defendant and Manriquez left the residence. When they returned later that afternoon, she noticed defendant was carrying a bag. Mary said that later Manriquez asked her if she wanted to buy a sweater, which she did for $5, knowing it was probably stolen.
Later, Sumpter received information from Manriquez's mother that Juan had been involved in the theft and drove the vehicle. He then spoke to Juan and told him he had information that Juan had been the driver, and that Juan had lied to him. Juan asked what would happen if he told the truth. Sumpter said if he told the truth, he would not arrest or charge him, and would consult the district attorney's office about immunity in exchange for his testimony. Juan agreed to tell the truth on the condition he not be charged. Juan then admitted lying, and told Sumpter he had driven defendant and Manriquez to the J C Penney Store in his vehicle to steal merchandise; Manriquez went in with defendant, who was carrying a large white bag; they came out with sweaters in their arms and entered his vehicle; and defendant gave him heroin in exchange for driving them.
At trial, Juan testified under a grant of immunity that on January 1, defendant came into the living room and said, "'Let's go. Let's go to the store and go boosting.'" Juan interpreted this to mean stealing. Juan *391 drove defendant and Manriquez to the J C Penney Store and parked near the doors. Defendant carried a white bag as he and Manriquez entered the store. Approximately 10 minutes later, they came out. Defendant was still carrying the bag and Manriquez held sweaters, some of which were on hangers. They returned home and defendant gave Juan $10 worth of heroin.
Juan admitted lying to Sumpter, and said he had suffered two prior convictions for providing false information to police officers.
Mary testified she had been sleeping on her couch the morning of January 1. Later, she saw defendant and Manriquez enter the house. Defendant was carrying a white bag, and Manriquez had some sweaters. Manriquez showed her the sweaters and offered to sell one to her for $6. Mary admitted she knew the sweaters were stolen. In fact, a short time after defendant and Manriquez had returned, Mary learned Juan had driven their Blazer during the theft. That evening, Mary purchased a stolen sweater for $5. Subsequently, she saw defendant leave the house with the white bag. Mary admitted lying to Detective Sumpter so her husband would not get in trouble.

DISCUSSION

I,-V.[**]

VI. There was no error in refusing to strike defendant's prior serious felony conviction.
Defendant argues the trial court abused its discretion by refusing to strike one of his prior serious felony convictions in the furtherance of justice pursuant to section 1385.[5] The People contend the court's refusal to exercise its discretion to strike a prior is not appealable. Alternatively, the People argue the court did not abuse its discretion. For the reasons that follow, we hold there is a limited review of the matter on appeal.
At trial, defense counsel urged the trial court, in off-the-record discussions, to strike defendant's prior convictions under People v. Superior Court (Romero) (1996) 13 Cal.4th 497, 53 Cal.Rptr.2d 789, 917 P.2d 628. At sentencing, defense counsel requested the court consider striking one of the prior strikes. Both times the court refused to exercise its discretion to strike any of defendant's prior convictions, but gave no reasons for the refusal. However, according to the prosecutor's statements at sentencing, the court had indicated off the record that it felt defendant was "the model citizen for the three strikes law ...."
Neither defendant nor the People provide authority which squarely resolves the question of whether an appellate court has authority to review a trial court's decision (or non-decision) to not exercise its section 1385 discretion to strike or dismiss a prior conviction on its own motion.[6]
Defendant cites People v. Warren (1986) 179 Cal.App.3d 676, 224 Cal.Rptr. 746, to support his contention that we are obligated to review the court's refusal to exercise its Romero discretion to strike a prior conviction. However, Warren does not support his position. There, based on a favorable diagnostic report by the Department of Corrections, the trial judge said that if he were the Governor and not just a judge, he would *392 exercise the executive power of commutation and reduce the defendant's sentence of life without possibility of parole to life with the possibility of parole. (Id. at pp. 680-681, 683-684, 224 Cal.Rptr. 746). The court refused to exercise its section 1385 discretion to strike the special circumstances finding. It did so on the ground that such an act of judicial discretion would be a violation of the doctrine of separation of powers prohibited by the Constitution. (Id. at p. 684, 224 Cal. Rptr. 746.) We held the exercise of the court's section 1385 discretion would not be a violation of the separation of powers doctrine. (Id. at pp. 692-693, 224 Cal.Rptr. 746.) Consequently, we remanded so the court could reconsider whether it should exercise its discretion in light of our opinion. (Id. at p. 695, 224 Cal.Rptr. 746.) Thus, we did not review the record to determine if the court abused its discretion by refusing to exercise it, and we did not find the trial court committed an abuse of discretion in refusing to strike the special circumstances. We simply determined the trial court misunderstood the scope of its power under the Constitution.
When a court exercises its extraordinary power of dismissal, it must explain its action on the record in order to facilitate review and public awareness. (§ 1385, subd. (a); People v. Bracey (1994) 21 Cal.App.4th 1532, 1541, 26 Cal.Rptr.2d 730; People v. Harris, supra, 221 Cal.App.3d at pp. 1228-1229, 278 Cal. Rptr. 391.) There is no similar requirement that a court explain its decision not to exercise its power to dismiss or strike. (People v. McCowan (1986) 182 Cal.App.3d 1, 17, 227 Cal.Rptr. 23.) Further, the extraordinary power to dismiss under section 1385 may be exercised only upon the court's own motion or the motion of the People. Section 1385 does not confer a motion or right to relief upon the defendant. (People v. Barraza (1994) 30 Cal.App.4th 114, 121, fn. 8, 35 Cal. Rptr.2d 377; People v. Superior Court (Flores) (1989) 214 Cal.App.3d 127, 136, 262 Cal.Rptr. 576; People v. Ritchie (1971) 17 Cal.App.3d 1098, 1104, 95 Cal.Rptr. 462.) A defendant may, however, informally ask or suggest that the trial court exercise its discretion under section 1385. (Ibid.) It follows that since the defendant has no right to make a motion under section 1385, a trial court is under no obligation to rule on such a "motion." (People v. Sassounian (1986) 182 Cal. App.3d 361, 413, 226 Cal.Rptr. 880.) It further follows that if the court does not exercise its power to dismiss or strike, there is no review available to defendant on appeal. (People v. Benson (1976) 64 Cal.App.3d Supp. 10, 13, 134 Cal.Rptr. 766 ["Section 1385 ... merely denies appellate relief to a defendant whose motion to dismiss has been denied by the trial court because of a lack of standing"].)
Appellate review is available when a trial court's refusal or failure to exercise its section 1385 discretion to dismiss or strike is based on a mistaken belief regarding its authority to do so. In those situations, relief on appeal is to remand or permit the defendant to petition by writ of habeas corpus. The appellate courts do not have the power to substitute their discretion for that of the trial court or to direct the trial court to exercise its discretion to dismiss. (People v. Superior Court (Flores), supra, 214 Cal. App.3d at p. 136, 262 Cal.Rptr. 576 ["The Legislature limited the right to initiate the use of section 1385 to the People and to the court"]; see also People v. Fuhrman (1997) 16 Cal.4th 930, 946-947, 67 Cal.Rptr.2d 1, 941 P.2d 1189, fn. omitted ["We express no opinion on the manner in which the trial court should exercise its discretion in the event defendant files a petition for writ of habeas corpus"].) We simply may review for an abuse of discretion where the court exercises its section 1385 authority to dismiss. (People v. Williams (1998) 17 Cal.4th 148, 158-159, 69 Cal.Rptr.2d 917, 948 P.2d 429.) There is no authority granting the appellate courts the ability to review a court's informed decision to not exercise its section 1385 power in the furtherance of justice.[7]
*393 Our conclusion is supported by Romero. At footnote 13, the court held that a petition for writ of habeas corpus filed by a defendant in the sentencing court "may be summarily denied if the record shows that the sentencing court was aware that it possessed the discretion to strike prior felony conviction allegations without the concurrence of the prosecuting attorney and did not strike the allegations ...." (People v. Superior Court (Romero), supra, 13 Cal.4th at pp. 530, fn. 13, 53 Cal.Rptr.2d 789, 917 P.2d 628; accord People v. Fuhrman, supra, 16 Cal.4th at p. 942, 67 Cal.Rptr.2d 1, 941 P.2d 1189.)
Here, we have a record which shows the trial court was aware of its discretion pursuant to section 1385, and refused to exercise it to strike any of defendant's priors. Under these circumstances, we summarily reject defendant's contention that the trial court abused its discretion by not striking any of his priors.

VII.-IX.[***]

DISPOSITION
The judgment is affirmed.
STONE (W.A.), Acting P.J., and BUCKLEY, J., concur.
NOTES
[*] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of Parts I.-V. and VII. through IX.
[1] All future references are to the California Penal Code unless otherwise indicated.
[2] During this time, defendant lived in the Varela residence, occupying a bedroom with his girlfriend, Christina Manriquez, who is Mary Varela's niece.
[**] See footnote*, ante.
[5] Section 1385, subdivision (a) provides, in pertinent part:

"(a) The judge ... may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons for the dismissal must be set forth in an order entered upon the minutes."
[6] For the first time in a petition for rehearing defendant cites People v. Gillispie (1997) 60 Cal. App.4th 429, 70 Cal.Rptr.2d 462, in which the Court of Appeal rejected the People's claim that a defendant lacks standing to appeal a trial court's decision not to exercise its discretion to strike a prior. We do not read Gillispie to conflict with the conclusion we reach here. We do not hold a defendant may not appeal or that a defendant lacks standing to appeal the issue. Rather, we conclude that trial court error for failure to exercise its section 1385 discretion must be affirmatively shown by the record. (Accord, People v. Gillispie, supra, 60 Cal.App.4th at p. 434, 70 Cal.Rptr.2d 462.) Under this limited review for trial court error, we do not reweigh the circumstances of the case to determine whether, in our opinion, the trial court should have, or properly refrained from, exercising its discretion to strike a prior conviction.
[7] Of course, where the trial court expresses clearly improper reasons for refusing to exercise its discretion, the appellate court must correct the error. For example, if the trial court indicates it would normally exercise its power to dismiss under the circumstances of the case but refuses to do so on the basis of the defendant's race, gender, religious beliefs, etc., such a reason would be arbitrary and capricious as a matter of law, and would thus merit appellate intervention. (Accord, People v. Gillispie, 60 Cal.App.4th at p. 434, 70 Cal.Rptr.2d 462.)
[***] See footnote *, ante.