Filed 3/26/15  P. v. Guadarrama CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>ALEJANDRO GUADARRAMA,<br><br>　　　Defendant and Appellant. | A141233<br><br>(Sonoma County<br>Super. Ct. No. SCR617087) |

　　　Defendant Alejandro Guadarrama appeals the prison sentence imposed in this case on the ground that he did not waive custody credits for time served in Victory Outreach, a residential treatment program, and is entitled to them pursuant to Penal Code section 2900.5, subdivision (a).  We agree that the record does not show that he waived credits, and we will remand the matter to the trial court to determine whether the placement qualifies for custody credits and, if so, to modify the judgment accordingly.

FACTUAL AND PROCEDURAL BACKGROUND

　　　Because this appeal is based on the issue of whether defendant waived custody credits, we will not discuss the underlying facts of this case.

　　　Defendant was charged by information with assault with a deadly weapon (a bottle) (Pen. Code, § 245, subd. (a)(1)),[1] actively participating in a criminal street gang (§ 186.22, subd. (a)), and misdemeanor resisting arrest (§ 148, subd. (a)(1)).  The information also alleged two enhancements:  the assault was committed for the benefit of

_____

[1] All statutory references are to the Penal Code.

a criminal street gang (§ 186.22, subd. (b)(1)(C)), and defendant personally caused great bodily injury in the commission of the crime (§ 12022.7, subd. (a)).

Defendant entered into a negotiated disposition of the case on July 13, 2012. The prosecution amended the gang enhancement to allege a violation of section 186.22, subdivision (b)(1)(B)), and struck the great bodily injury enhancement. When the court asked defendant's attorney to recite the terms of the plea, he stated that it was an "open plea" to the court to the assault with a deadly weapon charge and the amended gang enhancement. The court informed defendant that the maximum penalty was up to nine years in state prison. The court asked defendant whether "any other promises [had] been made to you," and defendant answered "[n]o." The court stated that it had "discussed the issue of the Victory Outreach [program] with your counsel" and asked that a representative from Sacramento Victory Outreach identify himself in the courtroom. The matter was set over for preparation of a probation report and sentencing.

Defendant was sentenced on August 30, 2012, to nine years in prison, with execution of sentence suspended. Defendant was placed on probation with various conditions, including that he enter the Victory Outreach residential treatment program. Before sentencing, the court spoke to defendant's family members and then asked to hear from defendant about his "commitment" to changing his life. This is the sum total of what was said at the sentencing hearing regarding custody credits:

"THE COURT: Your brother is a good example of what you should aim for.

"THE DEFENDANT: Yeah.

"THE COURT: There would be a waiver of past custody credits?

"[Defendant's Attorney] MR. FLAGERMAN: While he's at Victory Outreach, Your Honor, yes.

"THE COURT: Prepared for sentencing?

"MR. FLAGERMAN: So prepared."

After remarks by the deputy district attorney and further comments by defense counsel—none of which addressed waiver of custody credits—the trial judge stated in part:

2

"THE COURT:  I am going to sentence you to nine years state prison with execution of sentence suspended.  All past credits are waived.  Do you understand that?  And do you agree to that, sir?

"THE DEFENDANT:  Yes, Your Honor."

The Court then placed defendant on probation, with terms that included participating in the Victory Outreach program.  The court stated that "what I need to do is impose a jail sentence with the understanding that he can be released, so it would be a one-year jail sentence but he may be released to a representative of Victory Outreach with the understanding all credits he's done so far are waived.  He's to remain in custody until bed space is available."

On October 8, 2013, after having completed the Victory Outreach program, defendant admitted a violation of probation.

At defendant's sentencing on February 28, 2014, the court declined to reinstate probation and imposed the nine-year prison sentence.  Defendant had a different attorney (Jack Montgomery) from the one who had represented him at the time of his plea and original probationary sentence, and the deputy district attorney (Spencer Brady) was different, too.  Attorney Montgomery asked the court to give defendant credit for time served at Victory Outreach:

"MR. MONTGOMERY:  Judge, the only final consideration, would Your Honor consider allowing him to be given some credit for all the time that he did serve in treatment?  Of course, there's the obligatory waiver that seems to accompany every treatment program.  But he has made a very good faith and concerted effort to complete that program.  And I think he should be given some benefit on that.

"THE COURT:  What is your position?

"MR. BRADY [Prosecutor]:  We would object strongly to what we believe was a condition of probation, he agreed to waive those credits.

"THE COURT:  He did.

"MR. BRADY:  He's not entitled to that part and parcel.

"THE COURT:  He did do that.

3

"MR. BRADY: The decision to grant him that probation in the first place, if he had not agreed to waive, I think it's unlikely the Court would have followed through on its grant of probation.

"MR. MONTGOMERY: Well—

"THE COURT: That is true.

"MR. MONTGOMERY: Somewhat coercive to say. At least—

"THE COURT: That is true, sir.

"MR. MONTGOMERY: I just want to put that before your honor.

"THE COURT: No. I'm not going to do that, Mr. Montgomery.

"MR. MONTGOMERY: —in an effort to try and mitigate the sentence."

The court then sentenced defendant to nine years in state prison. The court ordered that the probation department calculate his "credits." The abstract of judgment reflects that defendant received 329 days of presentence credit (165 actual days and 164 conduct days), for the period of time between his arrest on the probation violation to the date of sentence on February 28, 2014. No credit was given for time in Victory Outreach.

DISCUSSION

I.

The issue on appeal is whether defendant is entitled to presentence credit for the time he served in the Victory Outreach program. Defendant claims that he did not waive these credits. We agree that he did not waive them.

Section 2900.5, subdivision (a) provides: "In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, including, but not limited to any time spent in a jail, . . . halfway house, rehabilitation facility, hospital, prison . . . or similar residential institution, all days of custody of the defendant, including days served as a condition of probation in compliance with a court order, . . . shall be credited upon his or her term of imprisonment . . . ."

It is undisputed that this provision "also applies to custodial time in a residential treatment facility." (*People v. Johnson* (2002) 28 Cal.4th 1050, 1053.) A defendant can

4

expressly waive section 2900.5 credits, so long as the waiver is "knowing and intelligent." (*Id*. at pp. 1054-1055.)

"The gravamen of whether such a waiver is knowing and intelligent is whether the defendant understood he was relinquishing or giving up custody credits to which he was otherwise entitled under section 2900.5. ([*People v*.] *Burks* [(1998)] 66 Cal.App.4th [232,] 236, fn.3.) . . . [¶] The better practice is for sentencing courts to expressly admonish defendants who waive custody credits . . . ." (*People v. Arnold* (2004) 33 Cal.4th 294, 308.) We look to the totality of circumstances to determine if a waiver is voluntary and intelligent. (*People v. Salazar* (1994) 29 Cal.App.4th 1550, 1554, fn. 1.)

Here, the record is clear that there was simply no waiver of future credits. The issue was not discussed on the record when defendant entered his plea "open" on July 13, 2012. When sentence was orally pronounced on August 30, 2012, the waiver of custody credits for Victory Outreach was not imposed as a condition of the probationary sentence. By contrast, the trial court explicitly stated that "[a]ll *past* credits are waived," and then asked defendant if he understood; the court subsequently reiterated that "all credits he's done *so far* are waived." (Emphasis added.)

Further, other parts of the record are silent. The written form advising defendant of his rights and the rights he was giving up by pleading guilty (sometimes known as a *Tahl* waiver[2]), is silent on waiver of future credits for time served in a residential treatment program. Nor does the probation report prepared for the original sentencing refer to waiver of these credits.

The evidence is insufficient to establish that the trial court required a waiver of future custody credits, let alone that future credits were waived. When the court asked defense counsel at the original sentencing on August 30, 2012, whether "[t]here would be a waiver of past custody credits," defense counsel did not respond to the question asked. Inexplicably, he responded by stating "[w]hile he's at Victory Outreach, Your Honor, yes." But this was a response as to future, not past custody credits. Further, the Attorney

---

[2] *In re Tahl* (1969) 1 Cal.3d 122.

5

General concedes that defendant "never expressed agreement with counsel's statement about the waiver, nor did he ever personally waive future credits." Defense counsel's remark linking "Victory Outreach" and "past custody credits" was the only time at the change of plea hearing or the original sentencing hearing that waiver of credits was raised in connection with Victory Outreach.[3] As we have noted, when the trial court addressed defendant later in the sentencing hearing on August 30, the issue of future custody credits never came up, although the issue of a waiver of past credits came up repeatedly. Under the totality of these circumstances, there was insufficient evidence of waiver. (*See People v. Harris* (1991) 227 Cal.App.3d 1223, 1226-1227 [finding waiver after brief colloquy at sentencing hearing was invalid under the circumstances].)

Finally, the clerk's minutes from the original sentencing hearing appear simply to be incorrect. They state, in part: "Although not a condition of probation, defendant waives custody credits while in residential treatment program" and "Defendant waives ALL time previously served." The oral pronouncement of judgment and sentence prevails over the clerk's minutes. (*People v. Mesa* (1975) 14 Cal.3d 466, 471-72 [rendering judgment is an oral pronouncement; "a discrepancy between the judgment as orally pronounced and as entered in the minutes is presumably the result of clerical error"].)[4]

---

[3] At a pretrial proceeding on June 29, 2012, a few weeks before the change of plea and before a different judge, the court (Judge Medvigy) summarized plea offers that apparently had just been made by the district attorney in his chambers to counsel for the defendants in this case. In the course of his remarks, the judge stated (apparently to unspecified multiple defendants in the courtroom) that if he were to grant probation, it would be lengthy and he would "expect a waiver of all credits earned to the date of sentencing, as well as those credits you would earn in the program." The transcript of this proceeding does not identify which defendants, if any, were present when these remarks were made. In any event, the Attorney General agrees that the record does not show that defendant agreed to waive credits.

[4] Because we conclude that there was no waiver of future credits, we need not address defendant's alternative argument that any waiver was invalid.

## II.

Defendant asks us to modify the judgment and order the trial court to issue an amended judgment reflecting custody credits of 363 actual days, plus conduct credits for time spent at Victory Outreach. The Attorney General urges us to remand the matter for the trial court to determine whether the Victory Outreach program qualifies as custody for the purposes of section 2900.5, subdivision (a) credits.

We will take the latter course. Whether the Victory Outreach program meets the criteria of the statute is a factual issue that is best left to the trial court in the first instance.

## DISPOSITION

The matter is remanded to the trial court for a hearing to determine whether defendant's time served in Victory Outreach qualifies for custody credits pursuant to section 2900.5, subdivision (a), and, if it does, to modify the judgment accordingly.

 

 

 

 

 

                          _____

                          Miller, J.

 

We concur:

 

_____

Kline, P.J.

 

_____

Stewart, J.