Filed 5/8/25  P. v. Carrington CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D085721 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FSB22003884) |
| STANLEY CARRINGTON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, Ronald M. Christianson, Judge.  (Retired judge of the San Bernardino Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Charles C. Ragland, Assistant Attorneys General, Collette C. Cavalier, Kathryn Kirschbaum, and Ksenia Gracheva, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Stanley Carrington of attempted murder (Pen. Code, §§ 664, 187, subd. (a); count 1) and found true the allegations that the

attempted murder was willful, deliberate, and premediated. The jury also found true that Carrington: (1) personally used a firearm in the commission of the offense within the meaning of Penal Code sections 12022.53, subdivision (b) and 12022.5, subdivision (a); (2) personally and intentionally discharged a firearm within the meaning of Penal Code section 12022.53, subdivision (c); and (3) personally and intentionally discharged a firearm that caused great bodily injury within the meaning of Penal Code section 12022.53, subdivision (d).

In a bifurcated proceeding, the trial court found true that Carrington had suffered two prior serious felony convictions (Pen. Code, § 1170.12, subds. (a)–(d), 667, subd. (b)) and two prior strike convictions (Pen. Code, § 667, subd. (a)(1)). The court also found true four aggravating factors.

Carrington filed a *Romero* motion, asking the court to strike the prior strike allegations. (See *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).) The prosecution opposed that motion. Ultimately, the court struck one of Carrington's prior strikes but declined to strike the other.

The court sentenced Carrington to prison for 39 years to life, consisting of the following: on count 1, seven years to life with the possibility of parole, doubled to 14 years to life due to the remaining strike prior, plus a consecutive 25-year-to-life term for the firearm use enhancement.

Carrington appeals, contending the trial court: (1) violated his constitutional and statutory rights under Code of Civil Procedure[1] section 231.7 when it denied defense counsel's objection to the prosecutor's use of a preemptory challenge to excuse a juror and (2) abused its discretion

---

[1] Statutory references are to the Code of Civil Procedure unless otherwise specified.

in failing to strike both of Carrington's prior strike convictions. We are not persuaded by Carrington's contentions; thus, we affirm the judgment.

## FACTUAL BACKGROUND

The details of Carrington's offense are not necessary for the resolution of the issues presented in the instant appeal. Suffice it to say, following a dispute over his paycheck, Carrington shot his boss four times in a fast food parking lot. At trial, Carrington testified that he was acting in self-defense.

## DISCUSSION

## I

## SECTION 231.7

A. Carrington's Contentions

Carrington argues that the trial court prejudicially erred in denying his motion under section 231.7 challenging the prosecution's use of a peremptory challenge to strike a Hispanic prospective juror. We disagree.

B. Background

During voir dire, defense counsel asked prospective jurors, including Prospective Juror No. 8 (PJ8),[2] about their thoughts on self-defense. Thereafter, PJ8 and Carrington's trial counsel engaged in the following exchange:

> "[PJ8]: I have had to, you know, defend myself before where I was almost going to get killed, and I bashed his head in, and I took off. But really he was the aggressor. He was way bigger than me, my sister's ex-husband; pretty

[2]    The augmented reporter's transcript does not specify the prosecutive jurors' assigned numbers. Below, however, the parties and the court addressed the juror in question as "Juror in Seat No. 8" during voir dire and the prosecution's peremptory challenge. In the opening brief, Carrington refers to this juror as Prospective Juror No. 8. For clarity and consistency, the People did the same in the respondent's brief. We do so in this opinion as well.

much body slammed me against the washing machine and started, you know, swinging on me, and I pulled out a block and a bandanna [*sic*] and started bashing his head. It was pretty bloody. He was on parole for murder and he went back for a parole charge.

"[Defense counsel]: So you have personal experience?

"[PJ8]: Yes.

"[Defense counsel]: When you say you took off, you mean you left the scene?

"[PJ8]: Yeah.

"[Defense counsel]: Now, do you think that sitting on this jury will be hard for you given this is also a self-defense case?

"[PJ8]: No."

After questioning PJ8 and other prospective jurors, the prosecutor sought to exercise a peremptory challenge to excuse PJ8. Defense counsel objected, arguing: "[T]his is a *Batson-Wheeler*[3] violation. [PJ8] is a Hispanic male, and we believe that is the reason he was kicked." The prosecutor responded:

> "The People are asking to excuse juror in Seat No. 8 not due to his ethnicity—or apparent ethnicity. The People are concerned about some of the responses to the general questions. For example, he mentioned that he was involved with an incident where he had to send—I believe someone went to the hospital. He used, it sounded like, a deadly weapon. So based on responses involving that incident, the People would not like him to stay on the panel."

---

3    *Batson v. Kentucky* (1986) 476 U.S. 79; *People v. Wheeler* (1978) 22 Cal.3d 258.

Defense counsel offered no further argument.  The court denied the objection, finding:  "Under [section] 231.7, the court is required to evaluate the reasons given to justify the peremptory in light of the totality of the circumstances and some other terms are defined in the statute.  Based on the statute I do find based on the totality of the circumstances that the peremptory challenge has not been exercised on the basis of race, ethnicity . . . or what would be perceived as membership in any of those groups."  The trial court thus excused PJ8.

When it reconvened several days later, the trial court revisited the issue, telling the parties:  "I didn't make a very good record. I reviewed the statute, which is [section] 231.7, and I want to revisit the issue so I can make a better record."  The court and the parties then engaged in the following exchange:

> "THE COURT:  The excusal by the People was challenged by the defense on the grounds of [PJ8] being a Hispanic male.  I'll give the People the opportunity to state in full their reasons on the record for excusing that juror.
>
> "[Prosecutor]: Yes.  Thank you, Your Honor.  The People exercised a peremptory challenge on that juror for a non-race-related reason.  The reason was based on various answers we heard from that juror, one being in response to the issue of self-defense.  The potential juror stated that he was involved in a situation recently where he had to use self-defense where he actually had assaulted another person.  [¶]  Based on his answer to that question that caused concern for the People and that is a reason that is not race-related.  I will note that the defendant is of a different race of that juror that was asked to be excused.
>
> "THE COURT:  [Defense counsel], anything else for the record?
>
> "[Defense counsel]:  No, Your Honor.

5

"THE COURT: I will find that [PJ8], by appearance, is a Hispanic male. That's the challenged juror. Our defendant, Mr. Carrington and the alleged victim in the case are African-American males. The reason given by the People for exercising the peremptory challenge deals with answers the challenged juror gave to specific questioning.

"The People asked the same type of questions to other jurors regarding the issues that were discussed with [PJ8], and the questioning of [PJ8] by the People did not in any way, shape or form be deemed as cursory. I don't know that the analysis of the present jury makeup is particularly relevant because they're so early in the jury selection process. But I will note that there are currently left on the jury I believe seven Hispanics; two of them Hispanic males even after the exercise of the challenge to [PJ8].

"Based on the totality of the circumstances, the court finds clear and convincing evidence that an objectively reasonable person would not view the factors or rationale for the challenge to be based on race, ethnicity, national origin or gender, so the challenge to exercise of the peremptory on [PJ8] is denied.

"All right. Thank you. That makes a better record for the statute."

C.   Applicable Law

Section 231.7 prohibits the use of "a peremptory challenge to remove a prospective juror on the basis of the prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or the perceived membership of the prospective juror in any of those groups." (§ 231.7, subd. (a).) If a party or the trial court objects to the use of a peremptory challenge, "the party exercising the peremptory challenge shall state the reasons the peremptory challenge has been exercised." (*Id*., subd. (c).) The trial court then "evaluate[s] the reasons given to justify the peremptory challenge in light of the totality of the

6

circumstances.  The court shall consider only the reasons actually given and shall not speculate on, or assume the existence of, other possible justifications for the use of the peremptory challenge." (*Id.*, subd. (d)(1).)  Section 231.7 "contains two separate provisions (subds. (e) and (g)) describing presumptively invalid reasons for the exercise of a peremptory challenge. Each subdivision sets out a distinct process by which a court determines whether a presumptively invalid reason can be absolved of that presumption. (*Id.*, subds. (e), (f), (g)(2).)" (*People v. Ortiz* (2023) 96 Cal.App.5th 768, 793.) As relevant to this case, per Carrington's argument, presumptively invalid reasons include:  "Having a close relationship with people who have been stopped, arrested, or convicted of a crime."  (§ 231.7, subd. (e)(3).)

Finally, under section 231.7, subdivision (d), reasons that are not presumptively invalid are evaluated "in light of the totality of the circumstances" to determine if "there is a substantial likelihood that an objectively reasonable person[,]" who is aware that unconscious bias and purposeful discrimination have resulted in the unfair exclusion of potential jurors in California, would view membership or perceived membership in any of the protected groups as a factor in the use of the peremptory challenge. (§ 231.7, subd. (d)(1), (2)(A).)

On appeal, the overruling of an objection under section 231.7 is reviewed de novo "with the trial court's express factual findings reviewed for substantial evidence."  (§ 231.7, subd. (j).)  The appellate court is to consider only those reasons actually given by the trial court and may "not speculate as to or consider reasons that were not given to explain either the party's use of the peremptory challenge or the party's failure to challenge similarly situated jurors who are not members of the same cognizable group as the challenged juror, regardless of whether the moving party made a comparative analysis

7

argument in the trial court." (*Ibid*.)  If the appellate court concludes the trial court erred by overruling an objection, "that error shall be deemed prejudicial, the judgment shall be reversed, and the case remanded for a new trial."  (*Ibid*.)

D.    Analysis

Relying on *People v. Jaime* (2023) 91 Cal.App.5th 941 (*Jaime*), Carrington's primary argument here is that the prosecution "exercised a peremptory challenge for a reason unsupported by the evidence."  He further contends that the prosecutor did not present the court with any evidence to overcome the presumption that the peremptory challenge was discriminatory.  We are not persuaded.

In *Jaime*, the prosecution sought to exercise a peremptory challenge based on the prospective juror's negative experience with law enforcement—a ground specified as presumptively invalid under section 231.7, subdivision (e)(1).  (*Jaime, supra*, 91 Cal.App.5th at pp. 944–945.)  When asked for reasons to overcome the presumptively invalid reason, the prosecution simply reiterated the prospective juror's negative experience with law enforcement.  (*Id*. at p. 947.)  Nonetheless, the trial court concluded " 'based on everything that [it] saw and heard that the challenge was not based on an impermissible purpose, that it was a valid constitutional peremptory challenge.' "  (*Id*. at p. 945.)  The appellate court concluded that the trial court prejudicially erred because the prosecutor provided no evidence to rebut the presumptively invalid reasons for exercising the peremptory challenge.  (*Id*. at p. 947 ["Allowing a party to use the presumptively invalid reasons to overcome the presumption would render section 231.7, subdivision (e) meaningless"].)

*Jaime* is not helpful to Carrington's position in the instant matter. Unlike the prosecutor in *Jaime*, the prosecutor here did not base her peremptory challenge of PJ8 on a presumptively invalid reason. Rather, the prosecutor articulated that she exercised a peremptory challenge on PJ8 based on his statement that he used self-defense when he was assaulted by another person. Such a reason is not presumptively invalid under section 231.7. Therefore, *Jaime* is not applicable to our analysis here.

Yet, Carrington now claims on appeal that the prosecutor exercised a peremptory challenge on PJ8 because of that prospective juror's relationship with his ex-brother-in-law who had been convicted of a crime. Putting aside the fact that Carrington made no such contention below, we conclude that the record belies Carrington's argument.

During voir dire, PJ8 indicated that he used a weapon to defend himself against his ex-brother-in-law, who "was the aggressor" and had "body slammed" him. He also stated that his ex-brother-in-law "was way bigger than [him]," and he needed to defend himself "before . . . [he] was . . . killed." In explaining why she exercised a peremptory challenge on PJ8, the prosecutor clarified that PJ8's statement that he was involved in a situation where he used self-defense against someone caused her "concern." The prosecutor's explanation was consistent with her earlier description as to why she did not want PJ8 to remain on the jury panel: "[H]e mentioned that he was involved in an incident where he had to send—I believe someone went to the hospital. He used, it sounded, like a deadly weapon." And the prospective jurors were told that the case would involve a claim of self-defense. Indeed, at trial, Carrington testified that the victim was acting very aggressively toward him and was much larger and younger than him.

9

We note that nowhere in the record is there any indication that the prosecutor used a peremptory challenge on PJ8 because of his "close relationship with" his ex-brother in law "who ha[d] been . . . convicted of a crime." (See § 231.7, subd. (e)(3).) In fact, there was no indication in the record that PJ8 was close to his ex-brother-in-law. Moreover, the record supports the opposite inference. The ex-brother-in-law aggressively attacked PJ8 and body slammed him against a washing machine, and PJ8 felt the need to defend himself with a weapon, leaving the ex-brother-in-law "bloody" after "bashing his head."

Here, Carrington faults the trial court for not trying "to determine whether [PJ8] was excused due to his former brother-in-law's arrest, murder conviction, and imprisonment, each of which would have rendered this peremptory challenge presumptively prejudicial." But the statute requires the trial court to only consider "the reasons actually given and . . . not speculate on, or assume the existence of, other possible justifications for the use of the peremptory challenge." (§ 231.7, subd. (d)(1).) Thus, the court was not to explore other possible reasons that could have conceivably been used to justify the peremptory challenge. Rather, it was required to "evaluate the reasons given to justify the peremptory challenge in light of the totality of the circumstances." (*Ibid.*)

Although the trial court could not speculate about other possible reasons for the challenge, defense counsel was free to probe other potential explanations for the use of the challenge. To this end, she could have explored PJ8's relationship with his ex-brother-in-law during voir dire or even argued that the prosecutor was challenging PJ8 based on his close relationship with his ex-brother-in-law who had been convicted of a crime. Yet, despite being given multiple opportunities to do so, defense counsel

10

made no such argument.  The only argument she offered was the claim that the prosecutor challenged PJ8 because he was a Hispanic male.  The record does not support that allegation.

In summary, we conclude the trial court did not err in overruling Carrington's objection to the use of the preemptory challenge on PJ8.  This case was described to prospective jurors as a self-defense case.  PJ8 stated that he had used self-defense against his ex-brother-in-law and left the ex-brother-in-law "bloody" after he "bashed" the ex-brother-in-law in the "head."  When the prosecutor sought to dismiss PJ8 by peremptory challenge, defense counsel objected on the ground that the challenge was motivated by the prospective juror's race.  The trial court followed with the proper procedure under section 231.7 and asked the prosecutor to state her reasons for the challenge.  Indeed, to make a better record, the trial court did this twice.  The prosecutor explained that she was concerned about PJ8's statements regarding his use of self-defense.  Pursuant to section 231.7, the court evaluated the reasons given, accepted them, overruled the objection, and explained its reasons on the record.  Under subdivisions (b)–(d) of section 231.7, the correct procedure was followed, and the trial court's analysis was proper.

II

THE *ROMERO* MOTION

A.    Carrington's Contentions

Carrington asserts the trial court abused its discretion when it granted his *Romero* motion in part and denied it in part, striking one of his prior convictions but not the other.  Specifically, he claims that he "does not fit the Three Strikes profile and is not within the spirit of this law."  On the record before us, we conclude the trial court did not abuse its discretion.

B.    Background

Before sentencing, Carrington filed a *Romero* motion to dismiss his two prior strike allegations, which the court found true.  In the motion, Carrington argued that he had a tumultuous upbringing, that his strike priors were over 20 years old, that the present felony conviction was his first since 1999, and that he is not the type of habitual offender envisioned by the "Three Strikes" law.  The prosecution opposed the motion, arguing that Carrington's prior strike convictions were robberies during which he personally used a firearm and that Carrington was prone to "committing serious crimes with a weapon when released from penal custody."

At sentencing, the trial court indicated that it had received, read, and considered the parties' sentencing briefs and Carrington's *Romero* motion, as well as the probation report, the aggravating factors found true by the court, and trial testimony.  The court noted that for purposes of sentencing, it would not use the firearm enhancement found true by the court.  Defense counsel emphasized that Carrington had "remained crime free for very long" and did not offend during his periods of incarceration, which "put him at . . . 23 years with absolutely no offenses."  The trial court granted Carrington's motion in

12

part and denied it in part, striking one of Carrington's strike priors but not the other. To this end, the court explained:

> "As to the *Romero* motion issue, I'll just note that the court found true at the court trial the two prior strikes that were alleged, 1998 Orange County robbery and a 1999 Riverside County robbery. Those were the dates of the offense. The dates of conviction were actually flip-flopped.

> "The Riverside County case resulted in 2000 and a 15-year sentence for Mr. Carrington. The Orange County case in 2013 resulted in a 2-year state prison sentence. Of course the new case is an attempted first-degree murder with use of a firearm.

> "The robberies themselves are over 20 years old. Mr. Carrington did a significant amount of time on those. A substantial block of time since his release went by without a significant record. I think there was one misdemeanor in Texas for a possession of marijuana. Likely it wouldn't be a crime here in California. Other than that, crime free until the new case occurred in 2022.

> "On the other side, the circumstances of the new cases are violent and extremely serious. Mr. Carrington was in possession of a firearm, of course he's prohibited from being in possession of. Although, that charge, for a reason I'm not quite aware of, did not make it past the preliminary hearing, so it wasn't charged in the Information.

> "The potential maximum sentence . . . on this case as indicated in the probation report is extremely lengthy and would be a functional equivalent of an LWOP [life without the possibility of parole] sentence. Also, I've considered the mitigating information in the defense brief.

> "I have—then based on my analysis of all of this information for the *Romero* motion, I do find it appropriate to . . . strike a prior strike and prior serious felony allegation. That's the conviction that's dated 2013 from Orange County. That's the older of the two occurring cases. So the court will grant the *Romero* and strike that one

13

prior.  The other prior strike and prior serious felony from Riverside County does remain."

## C.    Analysis

Penal Code section 1385, subdivision (a) affords a court discretion to, in the furtherance of justice, "order an action to be dismissed."  In *Romero*, our Supreme Court held that Penal Code section 1385, subdivision (a) "permit[s] a court . . . to strike prior felony conviction allegations in cases brought under the Three Strikes law." (*Romero, supra*, 13 Cal.4th at pp. 529–530.)  The *Romero* court emphasized that this discretion is limited, and " 'requires consideration both of the constitutional rights of the defendant, and the interests of society represented by the People . . . .  At the very least, the reason for dismissal must be "that which would motivate a reasonable judge." ' " (*Id.* at pp. 530–531, italics omitted.)  Our Supreme Court also has insisted that a prior strike should only be dismissed when a court deems a defendant to be "outside the spirit" of the Three Strikes law.  (*People v. Williams* (1998) 17 Cal.4th 148, 163 (*Williams*).)  In making this determination, the court must consider "whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Id.* at p. 161.)

We review a court's ruling on a *Romero* motion for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 374 (*Carmony*).)  The trial court is presumed to have considered all relevant factors in its decision on a *Romero* motion.  (*People v. Brugman* (2021) 62 Cal.App.5th 608, 638; *People v. Myers* (1999) 69 Cal.App.4th 305, 310 (*Myers*).)  This presumption necessarily limits the circumstances in which a trial court will be found to have abused its

14

discretion in deciding not to dismiss a prior strike conviction. (*Carmony*, at p. 378.) Such an abuse may be found, for example, where the court was not aware it had the discretion to dismiss a prior strike or considered impermissible factors in its decision. (*Ibid*.)

On the record before us, we cannot find that the trial court's partial denial of Carrington's *Romero* motion was "so irrational or arbitrary that no reasonable person could agree with it." (*Carmony, supra*, 33 Cal.4th at p. 377.) "Where the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance." (*Myers, supra*, 69 Cal.App.4th at p. 310.)

Here, the trial court was aware of its discretion to dismiss Carrington's prior strikes and diligently considered the relevant factors in making its decision. (See *Williams, supra*, 17 Cal.4th at p. 161.) The court acknowledged that Carrington committed the robberies underlying his prior strikes over 20 years ago and "did a significant amount of time on those." The court further noted that a substantial amount of time had passed since Carrington's release without a significant criminal record. However, the court also considered the four aggravating factors that it found true and observed that the circumstances in the instant matter were "violent and extremely serious," and that Carrington used a firearm in the commission of the offense, which he unlawfully possessed.

Nonetheless, Carrington insists that the trial court's decision to deny his *Romero* motion in part "was not based on any articulated grounds and therefore was not supported by informed discretion." But the trial court only is required to articulate its reasons when it decides to strike a strike prior, not when it declines to do so. (*In re Large* (2007) 41 Cal.4th 538, 550.) Penal

Code section 1385, subdivision (a) states that the "[t]he reasons for the dismissal shall be stated orally on the record" and does not require a court to "explain its decision not to exercise its power to dismiss or strike." (*People v. Benevides* (1998) 64 Cal.App.4th 728, 734; see *Carmony, supra*, 33 Cal.4th at p. 376 ["The absence of such a requirement merely reflects the legislative presumption that a court acts properly whenever it sentences a defendant in accordance with the [T]hree [S]trikes law"].)

Under *Carmony*, Carrington's claims that the trial court erred when it "failed to cite to any grounds for denying the Romero motion as to one of the prior strikes" and that the court had "no good cause" to deny striking one of the strikes fail. Likewise, his argument that the trial court's decision "was not supported by informed discretion" also is not well taken. Moreover, based on the record before us, the trial court clearly was aware of its discretionary power.

In these circumstances, it was well within the trial court's discretion to conclude that Carrington did not fall "outside the [Three Strikes] scheme's spirit" and should not "be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Williams, supra*, 17 Cal.4th at pp. 161, 163.) The court was aware of its discretion and did not consider impermissible factors. Because "the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law" (*Myers, supra*, 69 Cal.App.4th at p. 310), we find no abuse of discretion.

## DISPOSITION

The judgment is affirmed.


                                        O'ROURKE, Acting P. J.

WE CONCUR:


IRION, J.


CASTILLO, J.